THE CONNECTICUT LIGHT AND POWER COMPANY *vs.*
THE TOWN OF SOUTHBURY.

Third Judicial District, Bridgeport, April Term, 1920.
PRENTICE, C. J., WHEELER, BEACH, GAGER and CASE, JS.

A jurisdictional fact alleged in the complaint and found true in the judgment-file is sufficient on appeal, as the finding made for that purpose can be helped out by reference to the recitals of the judgment.

Chapter 205 of the Public Acts of 1919 provides for "the alteration, relocation or abandonment" of so much of a highway as may be flooded by the construction and maintenance of a duly-authorized dam; and that if the parties interested cannot agree upon such alteration, relocation or abandonment, the person or corporation constructing or operating the dam may prefer his or its complaint to the Superior Court or a judge thereof against the town or towns bound to maintain such highway, etc. *Held* that where the only question of disagreement was as to whether certain pent highways or road ends should be "abandoned" or not, there was no reason why the petitioner should allege and prove any disagreement with respect to their "alteration" or "relocation," especially where that could be accomplished only by extending the roads as wharves or piers into the waters of the petitioner's pond, where they would be useless as highways for public travel.

The authority of the General Assembly over the discontinuance, alteration or relocation of highways is supreme.

Connecticut Light & Power Co. *v.* Southbury.

As tending to prove that the parties could not agree upon the abandonment of these road ends, the trial judge admitted records of town meetings showing a disagreement respecting the abandonment of another road, now discontinued, along the bank of the river at which the roads in question terminated. *Held* that the flooding of this whole group of highways was part of one plan, and that the evidence admitted could not be said to be absolutely irrelevant on the issue before the judge.

The rules of court as to return days and times for filing pleadings and for hearings do not apply to proceedings brought to a judge in vacation under the authority of special statutes, and therefore a motion for the continuance of such a proceeding is addressed to the discretion of the judge.

The respondent contended that the Act of 1919 was in violation of Article Second of the Constitution of this State relating to the distribution of the powers of government, in that it conferred on the Superior Court or a judge thereof extra judicial powers or functions. *Held* that in view of longstanding legislation of like nature (General Statutes, §§ 1429, 1451–1453, 1605) the statute in question did not attempt to enlarge the jurisdiction of the Superior Court beyond its well-settled limits.

The Act of 1919 does not purport to extinguish or affect any private rights of property which may exist in, or in connection with, the highway; the adjudication therein authorized, extending only so far as to prevent the flooding of the highway from being "deemed a common nuisance."

Submitted on briefs April 13th, reargued May 13th, decided July 20th, 1920.

APPLICATION by the plaintiff to the *Hon. Donald T. Warner*, a judge of the Superior Court, for permission to continue to construct, raise and operate its dam for power purposes across the Housatonic River, and for an order for the abandonment of five sections of highway lying in the town of Southbury and in the town of Oxford, or partly in each, which would be flooded with water when the plaintiff's dam was completed; facts found and judgment rendered for the plaintiff, and appeal by the defendant town of Southbury. *No error.*

The petition was brought pursuant to the provisions of Chapter 205 of the Public Acts of 1919, and as amended it alleges that the petitioner is constructing

a dam for power purposes across the Housatonic River which, when completed, will cause to be flowed five sections of public highways described therein, ranging from 200 to 500 feet in length, all of which are described as extending in a northerly, northeasterly, or north-westerly direction, from the so-called River Road. The River Road itself is alleged to have been. already duly discontinued, under the provisions of Chapter 217 of the Public Acts of 1919, within the limits described in the petition. The prayer for relief asks for an order of notice of the time and place of hearing, for permission to continue to construct and operate the dam, and for the abandonment of the five sections of highway described.

On July 31st, 1919, an order of notice of hearing on August 11th was issued and served August 1st, and an adjourned hearing was had thereon on August 18th, when demurrers were filed, overruled, and the case continued to August 21st. On that date the town of Oxford withdrew its appearance and consented to judgment, and the town of Southbury was required to file its answer, and the cause was on the same day tried and judgment rendered ordering the sections of highway abandoned upon payment to the defendant town of specified damages.

The judgment-file finds all the allegations of the amended petition true, and in the findings made for the purpose of appeal it is found that the Connecticut Light and Power Company is a corporation chartered by the State; that the abandonment of the described sections of highway is advisable and necessary in connection with the construction and operation of the dam in question; and that the petitioner is not able to agree upon the abandonment of the described sections of highway or any part thereof, with either the town of Oxford or the town of Southbury.

*William H. Shields, Jr.*, with whom were *John H. Cassidy* and *Lawrence L. Lewis*, for the appellant (the defendant Town of Southbury).

*Terrence F. Carmody* and *Walter E. Monagan*, with whom, on the brief, was *Alfred C. Baldwin*, for the appellee (plaintiff).

BEACH, J. The questions raised by the appeal of the town of Southbury will be dealt with as summarized and described in its brief. Chapter 205 of the Public Acts of 1919, relates to persons or corporations engaged in constructing, raising or operating a dam for milling, manufacturing or power purposes. The amended complaint alleges that the petitioner is constructing its dam for power purposes, and the judgment-file finds that all the allegations of the amended petition are true. The defendant nevertheless claims that because there is no express finding to that effect, made for the purposes of appeal, the jurisdictional fact is not found. The claim is unsound. The jurisdictional fact is found in the judgment-file, and we have often held that a finding on appeal can be helped out by reference to the recitals of the judgment.

The petition alleges that the petitioner is not able to agree on the abandonment of the described sections of the highway with the respondent towns, and the trial court has so found. Section 2 of the Act provides: "If the above parties fail to agree upon the alteration, relocation or abandonment of any such highway or any portion thereof, the person or corporation constructing, raising or operating such dam may prefer a complaint against such other party," etc. It is claimed that the petitioner must allege and prove that it is unable to agree either on the alteration, or on the relocation, or on the abandonment, of these highways, before it

can apply for relief under the statute.   There is, how-
ever, no reason why the petitioner should allege and
prove a disagreement as to relocation of the highway,
when no relocation is contemplated.   There is nothing
in this particular case for the parties to disagree about,
except the terms and conditions of abandonment.
From the time that the so-called River Road was
abandoned, the highways in question became pent
roads, and if permission is given to flood them back to
the points where the contour line of the proposed water
level happens to cross them, they will to that extent
cease to exist.   There is no question of relocating them
or altering them, for that cannot be done except by
extending them as wharves or piers into the waters of
the petitioner's pond, where they would be useless as
highways for public travel.

It is unnecessary to follow the argument leading to
the conclusion that the public is entitled to another
highway, any further than to say that the authority
of the General Assembly over the discontinuance,
alteration or relocation of highways, is supreme.   This
is not a case of interrupting travel to a given destina-
tion.   In this case the destination itself has been wiped
out.

The same considerations apply to the contention that
the prayer for relief was demurrable because it did not
ask for the alteration and relocation of these highways,
as well as for their abandonment.

It is objected that the court admitted the evidence
of certain records of town meetings tending to show
that the petitioner and the respondent towns were
unable to agree upon the abandonment of the River
Road.   It is claimed for the respondent, and denied
for the petitioner, that these records were wholly
irrelevant on the issue of the failure to agree as to the
road ends now in question.   The evidence is competent,

and the objection is merely to its relevancy. The flooding of this whole group of highways was part of one plan, and the failure of the town to agree on terms of abandonment of the River Road, which was the main highway, is not so logically disconnected with the issue of a failure to agree on terms of abandoning these connecting roads, as to enable us to say, without knowing what other evidence was offered, that proof of a failure to agree on the former is absolutely irrelevant on the issue of a failure to agree on the latter. This is especially true, because these road-ends were necessarily made useless for some distance by the abandonment of the River Road.

It is claimed that the trial judge erred in refusing to grant a continuance, or to allow the respondent thirty days from the return-day of the petition within which to demur or answer. This claim is based on the theory that the statute, authorizing the person or corporation constructing the dam to "prefer a complaint against such other party . . . to the Superior Court . . . or to any judge of the Superior Court," etc., requires the bringing of a civil action subject to the rules of court. We think this claim is correct so far as complaints under the Act addressed to the Superior Court are concerned; but the authority to prefer a complaint to any judge of the Superior Court was evidently given for the very purpose of avoiding the delays incident to civil actions subject to the rules of court, and to enable proceedings under the Act to be commenced and heard during July and August when the Superior Court is not in session. The rules of court as to return days, and times for filing pleadings, and hearings, do not apply to proceedings brought to a judge in vacation under the authority of special statutes, and the motion for a continuance was therefore addressed to the discretion of the judge. No facts are

found which indicate any abuse of discretion on his part.

The only other questions which we think it necessary to discuss are those relating to the constitutionality of Chapter 205 of the Public Acts of 1919. It is said that the Act attempts to confer on the Superior Court or a judge thereof extra judicial powers or functions in violation of Article Second of the Constitution of this State. Section 1 of the Act provides that if the parties agree in writing upon the terms and conditions on which the highway in question is to be altered, relocated or abandoned, the agreement, when recorded in the town clerk's office "shall be sufficient authority for the person or corporation . . . to flood such highway." Section 2 provides that if the person or corporation engaged in constructing the dam cannot agree upon the alteration, relocation or abandonment of a highway which will be flooded thereby, he may prefer a complaint to the Superior Court or a judge thereof, "which court or judge may grant such person or corporation such permission and order the alteration, relocation or abandonment of such highway of any portion thereof, upon payment to the party or parties liable to maintain such highway of such damages as such court or judge may adjudge or on such person or corporation complying with such other terms as such court or judge may order; and on such person or corporation paying such damages or giving bond with surety to the satisfaction of such court or judge, that such person or corporation will comply with such terms, the flooding of said highway by means of said dam shall not be deemed a common nuisance."

Taking the two sections together, the Act provides that a corporation constructing a dam for milling, manufacturing or power purposes shall have the right to flood highways (1) on filing a written agreement with

the town as to the terms and conditions of the altera-
tion, relocation or abandonment of such highways
in the town clerk's office; (2) if the parties cannot agree
on such terms, on complying with such terms and
conditions as the court or judge may impose.

In this respect § 2 simply extends to dams for power
purposes, the same jurisdiction which was conferred
on the Superior Court by an Act entitled "An Act re-
lative to Highways flowed by reason of Dams erected
for manufacturing purposes," passed in 1838. The
Act of 1838 is now § 1429 of the General Statutes, and
§ 2 of the statute in question practically re-enacts it
with the inclusion of dams for power purposes. Section
1453 of the General Statutes is another statute of more
ancient origin, authorizing the Superior Court, by a
committee, to lay out highways when the selectmen of
a town refuse to do so. Section 1605 of the General
Statutes authorizes the Superior Court to establish
or relocate ferries, and to "cause any necessary roads,
leading to such ferry, to be laid out and opened." Sec-
tions 1451 and 1452 give to the Superior Court or a
judge thereof control over the layout of highways near
railroad tracks. These, and other statutes of the same
kind, show that the second section of the Act in ques-
tion does not attempt to enlarge the jurisdiction of the
Superior Court beyond its well-settled limits.

In this case the trial judge simply ascertained and
awarded actual damages for the flowing of these
highways; and on this record it does not appear why, in
the enforcement of the Act, the court or judge should
be required to do more than to award such damages,
or to exact a bond for the estimated or actual cost of
altering or relocating the highway so as to provide a
reasonably sufficient substitute for the flooded portion
thereof. See § 1429 of the General Statutes.

It is also claimed that the statute is unconstitutional

as it authorizes the taking of private property for a public use without just compensation or due process of law. This claim is based upon a misconstruction of the statute. It does not purport to affect or extinguish any private rights of property which may exist in or in connection with the highway. The only effect of the adjudication provided for is that the flooding of the highway "shall not be deemed a common nuisance." In other words, this statute simply provides for the extinguishment of the public easement, and for compensation to the party or parties liable to maintain the highway. Adjoining proprietors are entitled under other provisions of law to compensation for the flowing of their land, including any land owned in fee within the limits of the highway, and also to compensation for any special damages to land not flowed, caused by the abandonment, alteration or relocation of the highway.

There is no error.

In this opinion the other judges concurred.