SAGE-ALLEN COMPANY, INC., ET ALS. *vs.* JESSE E. WHEELER ET ALS.

MALTBIE, C. J., HAINES, BANKS, AVERY and JENNINGS, Js.

Argued January 3d—decided April 3d, 1935.

*Ernest L. Averill,* Deputy Attorney General, with whom were *Warren B. Burrows,* Attorney General, and *H. Roger Jones,* Assistant Attorney General, for the appellants (defendants).

*James W. Carpenter,* with whom were *Louis M. Schatz* and *Julius G. Day, Jr.,* for the appellees (plaintiffs).

MALTBIE, C. J. The plaintiffs in this action are two corporations operating department stores, another corporation, the Buhl Optical Company, Inc., which conducts an optical department in each of the stores, and two licensed optometrists who, under an agreement with the latter company, manage its business in the stores. The defendants are the members of the Connecticut state board of examiners in optometry. The relief sought is a declaratory judgment as to the validity of a certain regulation adopted by the board and an injunction restraining its enforcement or the revocation or suspension of the licenses of the individual defendants for violation of its terms. The regulation is as follows: "The advertising by any licensed optometrist, or any licensed optometrist who is also engaged in the dispensing of ophthalmic products, etc., of a definite fixed price for service or eyeglasses, spectacles, frames, lenses and accessories is prohibited as immoral, fraudulent, dishonorable and unprofessional conduct. Prices in this section shall be construed to be definite and fixed and coming within the purview of this section even though the words 'and up' or 'as low as' or words of similar import, are used in connection therewith; the purpose of this regulation being specifically to eliminate all price ad-

vertising. Any registered optometrist, who, through his license, makes possible the establishment or conduct of an optical department by any person or persons not licensed to practice optometry, shall be held responsible for all advertising published under the sponsorship of his license and in each advertisement his name shall appear as sponsor for the department in letters of a size proportionate to the size of the advertisement." The trial court granted the injunction sought and the defendants have appealed.

The finding states that each of the optical departments in the stores is in charge of one of the plaintiff optometrists, who is employed by the Buhl Company and is paid a salary with certain additional percentages of receipts. Each of these individual plaintiffs also practices privately as a licensed optometrist in the quarters occupied by the department and the fees received for such services belong to the optometrist himself. The Buhl Company prepares advertisements of frames and lenses for glasses, which appear from time to time as a part of the advertisements of the department stores. In these the frames and lenses are advertised at fixed prices and the names of the individual plaintiffs appear in connection with the advertisements. The individual plaintiffs, however, make a charge for their services as optometrists in addition to the fixed prices advertised. In addition to prescriptions for lenses made by themselves they accept prescriptions from other optometrists and ophthalmologists and all prescriptions are forwarded to the home office of the Buhl Company where they are filled. The individual plaintiffs also make adjustments of lenses and frames for persons calling at the departments. The trial court, after the finding was filed, added a further statement that price advertising of optical goods as such by optometrists is not im-

moral, fraudulent, dishonorable or unprofessional. This finding is attacked, and while from the evidence the trial court might reasonably have inferred that price advertising of these goods was not immoral, fraudulent or dishonorable in any ordinary acceptance of those terms, there is no evidence that it was not unprofessional, in the sense that it was frowned upon by the profession as a whole and had a tendency to result in the sale of types of frames and lenses which were not suited to the eyes of particular individuals and which therefore might result in physical and nervous impairment; indeed, there is much evidence in the record to show that such price advertising is unprofessional in that sense. The finding must be corrected by striking out the statement that it is not unprofessional.

At the outset we are met with the claim of the defendants that the plaintiffs have not established a case which upon the facts would entitle them to relief by injunction. There is no finding that the plaintiffs would, if the regulation were enforced, suffer irreparable injury and while we are asked to add a statement that they would suffer such injury, the evidence goes no farther than to afford some support for such a finding if an interpretation is given to the regulation which, as we shall point out, is erroneous. We do not discuss this claim further because the action must be remanded upon another ground.

The defendants also claim that the individual plaintiffs have adequate remedy at law and hence are not entitled to injunctive relief. The only penalty which could be invoked, should they act in breach of the regulation, is the revocation of their licenses by the board; from such action they are given by the statute a right of appeal to the Superior Court; and upon that appeal every question now raised as to the validity of

the regulation could no doubt be put in issue. That remedy is available, however, only after the license has been revoked, and if these plaintiffs could show that the board of examiners in optometry were threatening to take such action against them under an illegal regulation and that to revoke their licenses would cause them serious damage for which they have no adequate redress at law, it may be that they would be entitled to an injunction against any proceedings to enforce it. See *Lazarevich* v. *Stoeckel,* 117 Conn. 260, 262, 167 Atl. 823. Moreover, the complaint sought relief by way of a declaratory judgment as to the validity of the regulation, and if the plaintiffs should not prove their right to an injunction to restrain its enforcement, the allegations of the complaint and the facts found both afford a rather typical case for such relief. Certainly these plaintiffs may justly claim that the court should declare whether or not the regulation is valid that they may, without actually violating it, be authoritatively apprised of their rights. *Sigal* v. *Wise,* 114 Conn. 297, 301, 158 Atl. 891. In view of the fact that the case must be remanded in any event, we need go no farther at present than to point out that the plaintiffs may be able upon further proceedings to establish a right to the relief asked in one form or another.

For upward of twenty years the State has regulated the practice of optometry and the provisions of the statutes now in force are found in Chapter 161, §§ 2844 to 2852 of the General Statutes, as amended by §§ 792b to 796b of the Cumulative Supplement, 1933. Briefly summarized, the provisions of these statutes are as follows: The practice of optometry is defined as "the employment of any means other than drugs for the measurement of the power of vision and the adaptation of lenses for the aid thereof." An

examining board is established, with power to make such rules and regulations "not inconsistent with law" as may be necessary to govern the practice of optometry as a profession, to revoke, suspend and refuse to reissue certificates of registration for cause, and to provide in its rules and by-laws for hearing with reference to all matters relating to the granting, revocation or refusal to reissue certificates or licenses; and it is stipulated that all the rules and regulations made or promulgated by the board must be "in keeping with the provisions of this chapter." Any applicant for a license must have graduated from an approved high school or had an equivalent education and from an approved school of optometry and must pass an examination in theoretic, practical and physiological optics, theoretic and practical optometry and the anatomy and physiology of the eye. The board may revoke the license of any optometrist for certain specified causes, among them, the peddling or soliciting of orders for optical goods from door to door or establishing a temporary office, "immoral, fraudulent, dishonorable or unprofessional conduct" or "illegal or incompetent or habitually negligent or unprofessional conduct in the practice of his profession." The section of the statutes from which these quotations are made also provides that the violation of any of the provisions of the chapter by an unlicensed employee in the employ of an optometrist with the knowledge of his employer shall be deemed to be a violation thereof by his employer, and continued violation shall be deemed prima facie knowledge on the part of the employer. This section of the statute ends with the following sentence: "Nothing herein contained shall prohibit the operation in a department store of an optical department under the supervision of a duly licensed optometrist." An appeal to the Superior Court from an

order suspending or revoking a license is provided. The provisions of the chapter do not apply to physicians and surgeons authorized to practice under the laws of this State nor to any person who shall sell spectacles or eyeglasses on prescription from any such physician or certified optometrist, provided such person does not attempt to measure the vision of the eye.

It is obvious from these provisions that the statutes are not intended to control the business of opticians who manufacture or sell optical goods but do not attempt to measure the vision of the eye and adapt lenses therefor. Nor does the provision we have quoted with reference to the right of a department store to operate an optical department forbid it from conducting such a business without the employment of a licensed optometrist. To construe the provision as requiring such a store to employ an optometrist as a condition of carrying on an optical business would be to discriminate between it and other stores or individuals engaged in the same business, which the Legislature never could have intended. The provision was added as a last minute amendment to the statute during its passage through the Legislature. Senate Journal, 1933, p. 1928; House Journal, 1933, p. 2074. The only reasonable explanation for its inclusion in the law is that it was feared that the provisions of the statutes might be taken as forbidding a department store to employ an optometrist in its optical department and the purpose was to leave no doubt that the store might do so. A department store may under its terms conduct an optical department where the services of an optometrist are not employed or it may employ a licensed optometrist in connection with such a department.

These considerations have a direct bearing upon the interpretation which must be given to the rule of the

board now before us. When the rule provides that "any registered optometrist, who, through his license, makes possible the establishment or conduct of an optical department by any person or persons not licensed to practice optometry," the reference cannot be to the establishment and conduct of an optical department in which optometry as defined in the statute is not practiced, because such a department could be conducted without the presence of a licensed optometrist. The reference must be to the establishment and conduct of a department which undertakes to perform such services as are covered by the statutes governing optometry. Moreover, the provision concerning advertising does not purport to make the optometrist connected with a department responsible for all the advertising of that department, but only for advertising published "under the sponsorship of his license." This phrase can only be reasonably interpreted as meaning advertising of those services which could not be performed except for the license held by the optometrist, that is, services which fall within the definition of optometry as given in the statute, or advertisements of optical goods in which his name appears as a licensed optometrist. The rule does not purport to forbid advertising, without the name of the optometrist appearing, of optical goods even at fixed prices. The purport of the rule is that, as an optometrist is forbidden in the conduct of his own business, to advertise at fixed prices his services or the sale of glasses, spectacles, frames, lenses and accessories, so he must not, when employed in an optical department, permit the advertisement by the department at fixed prices of such services as are within the purview of the statute, or of such goods when advertised under his sponsorship by reason of his name appearing therein.

If the rule were interpreted to mean that no optical

department could publish advertisements of optical goods without the name of the optometrist in charge appearing therein and that thereby he would be subject to have his license revoked if such goods were advertised at fixed prices, it would prevent any such department from advertising such goods at fixed prices, if the store desired to place the department in charge of a licensed optometrist, a privilege which is open to any store not employing a licensed optometrist. So interpreted the rule would constitute an attempt to regulate the sale of optical goods beyond the powers of the board and would create a discrimination of at least very doubtful constitutionality. If the rule as applied to an optometrist who is conducting his own business is in keeping with the provisions of the statute and if it is reasonably adapted to the protection of the public from injuries to vision or physical or nervous impairment, there is no sound reason for holding it invalid as applied to an optometrist who is employed by an unlicensed person to perform like acts. Nor is a distinction between advertisements of such optical goods as are specified in the rule which do not state the name of the optometrist and those which include his name without sound reason. It may be assumed that a person visiting the department in response to the latter type of advertisement expects the advice and attention of one who has qualified before the board of examiners in optometry, whereas, if the optometrist is not mentioned, the prospective purchaser visits the department as he would any place where merchandise is sold, relying upon his own judgment, with such assistance as he may receive from untrained employees of the store. *Harris* v. *State Board of Optometrical Examiners*, 287 Pa. St. 531, 537, 135 Atl. 237.

It is a matter of common knowledge that where a

person suffers from defective vision the use of eyeglasses not correctly adapted to remedy the defect may seriously aggravate it and, because of the resultant eye strain, may bring about nervous and even physical disorders, with accompanying discomfort and loss of efficiency. The regulation of the practice of optometry as defined in the statute falls well within the power which the Legislature may exercise in the protection of the public health and welfare. *McNaughton* v. *Johnson,* 242 U. S. 344, 37 Sup. Ct. 178; *Commonwealth* v. *Houtenbrink,* 235 Mass. 320, 126 N. E. 669; *State ex rel. Hallen* v. *Board of Examiners,* 37 Utah, 339, 343, 108 Pac. 347; *Harris* v. *State Board of Optometrical Examiners,* supra, p. 535. The purpose of the Legislature in the statutes in question was to guard the public against the practice of optometry by persons not properly qualified or against conduct by those who have qualified which is likely to be harmful in its result. It would be too much to expect of the Legislature that it should specifically forbid all improper practices likely to arise, and of necessity the details of its plan must be left to the board administering the law to work out.

In the sections of the statutes dealing with the grounds upon which a license may be revoked, the Legislature has used language specifically defining certain of them, or has used words having a reasonably certain meaning in the law, but it has then added certain general words such as "immoral," "dishonorable" or "unprofessional" as indicating the character of conduct which is a ground for revoking a license. These words in themselves have no significance in law even to a reasonable certainty and might seem to authorize the revocation of a license for acts having no reasonable relation to the underlying purpose of the statute, the protection of the public. Giving these

words a broad meaning, it would be difficult to justify the grant to the board of power to revoke a license for any conduct which it might deem to be immoral, dishonorable or unprofessional. *Czarra* v. *Board of Medical Supervisors,* 25 App. D. C. 443; *Hewitt* v. *Board of Medical Examiners,* 148 Cal. 590, 84 Pac. 39; *Harris* v. *State Board of Optometrical Examiners,* supra, p. 536. But if we did give to these words so broad a meaning, we would be attributing to the Legislature an intent to vest the board with power going beyond the scope of its purposes and to enact a law of at least doubtful constitutionality. We cannot assume that the Legislature intended to give expression to such an intent and must, if it is reasonably possible to do so, so construe the words it has used as to make the provision a valid and reasonable one. *Connecticut Light & Power Co.* v. *Southbury,* 95 Conn. 242, 247, 111 Atl. 360; *Blakeslee* v. *Water Commissioners,* 106 Conn. 642, 663, 139 Atl. 106; *Connelly* v. *Deconinck,* 113 Conn. 237, 240, 155 Atl. 231. The words must have been used in the light of the fundamental purpose of the statutes to regulate the profession in the public interest, and they can only be construed as intending to include conduct within their fair purport which either shows that the person guilty of it is intellectually or morally incompetent to practice the profession or has committed an act or acts of a nature likely to jeopardize the interest of the public. So construed, they vest in the board a power it may properly exercise. This interpretation of the grounds established for the revocation of a license has a direct bearing upon the scope of the regulations which the board may promulgate. In furtherance of its general purpose and to carry out the details of its plan of regulation, the Legislature could properly vest the board with power to make regulations reasonably

adapted to assure the competency of optometrists and to prevent conduct on their part which would tend to do harm to the public. *Shelton* v. *City of Shelton,* 111 Conn. 433, 437, 150 Atl. 811; *Donnelly* v. *New Haven,* 95 Conn. 647, 658, 111 Atl. 897; *Martin* v. *Baldy,* 249 Pa. St. 253, 260, 94 Atl. 1091; *Harris* v. *State Board of Optometrical Examiners,* supra; *People* v. *Roth,* 249 Ill. 532, 535, 94 N. E. 953; *State* v. *Normand,* 76 N. H. 541, 543, 85 Atl. 899; *Welch* v. *Swasey,* 193 Mass. 364, 79 N. E. 745; *State* v. *Atlantic Coast Line R. Co.,* 56 Fla. 617, 47 So. 969; 6 R. C. L. 177.

The particular regulation before us has two aspects. It is directed at the advertising at fixed prices, first of the services of a licensed optometrist and second of eyeglasses, spectacles, frames, lenses and accessories. Whether it is valid in either or both respects necessarily depends upon determining whether it falls within the limits of the powers of the board as we have just defined them. There is in the record much evidence bearing particularly upon the latter aspect of the rule, which is to the general effect that properly to correct defects of vision and protect the eyesight often involves the selection of a particular type of lenses and frame in which to hold the eyeglasses, and upon which an inference might be based that advertising of such articles at fixed prices tends to bring about the sale to a particular customer of lenses and frames not properly adapted to his needs. But the finding as corrected contains no facts upon which we could determine whether the regulation before us has a sufficient basis in the protection of the public to make it valid and we are not asked to add any facts relevant to this issue. We have therefore no basis before us upon which we could decide it. The memorandum of decision of the trial court shows that it based its decision of the case upon the assumption

that the statute in effect required an optical department in a store to employ a licensed optometrist and, in connection with the rule, forbade all advertising of optical goods by such a department at fixed prices. This interpretation of the statute and rules, as we have pointed out, is erroneous. The trial court's misinterpretation of rule and statute so entered into the conclusions upon which it decided the case that they necessarily lose their force and effect. The judgment cannot be sustained but the case must be remanded that the facts upon which the validity of the regulation depends may be developed in view of the construction we have placed upon it and upon the statute.

We have indicated the scope of the issues which must be determinative of the case and no purpose would be served by discussing the specific claims' of error.

There is error, the judgment is set aside and the case remanded to be proceeded with according to law.

In this opinion the other judges concurred.