[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a civil action to overturn a decision of the State Board of Education that concluded that the City of New Haven had failed to fund the local school system in an amount required by law.
Many of the facts that give rise to this action are not in dispute.
Dr. John Dow, Jr., Superintendent of the New Haven Public Schools, submitted an EDO 14 form to the State Department of Education, anticipating compliance with the Minimum Expenditure Requirement of 10-262j (MER). According to the second stage of the State Department of Education's process, a second EDO 14 form was sent in June 1990 to all school districts which were within five percent of meeting their MER. New Haven received a second form, and Superintendent Dow signed it according to state practice. Although the City of New Haven had increased the education budget by approximately 8% for fiscal year 1990-1991, the figures on the second form submitted by Superintendent Dow indicated a projected shortfall in the MER of $2,056,930. The EDO 14 form contains figures reflecting a preliminary projection of expenditures based on appropriations, whereas the EDO 1 form is the end of the school year report reflecting actual expenditures.
Dr. Dow indicates that the Board of Education's submission of its budget request and the Board of Finance's and the Board of Alderman's allocation with respect to the Board of Education's budget request and needs led him to request the second EDO 14 form which arrived in June 1990. On June 15, 1990, Dr. Dow also wrote Department of Education Commissioner Gerald Tirozzi a letter in which Dr. Dow concedes that the City of New Haven's appropriation would result in either a MER shortfall or inadequate funding of mandated special education, and Dr. Dow requested that Commissioner Tirozzi investigate the consequences CT Page 10828 of the deliberate underfunding of special education. Dr. Dow also indicated that there would be an additional 250 students in special education in 1990-1991 as per his report. In a letter dated June 20, 1990, Commissioner Tirozzi indicated that there was an obligation to fulfill the federal and state mandates for special education even if there was a shortfall of funding for regular education. Dr. Dow submitted the second EDO 14 form on June 21, 1990.
According to the procedure prescribed in Conn. General Statutes 10-4b, the State Board of Education initiated a complaint against the New Haven Board of Education, the City of New Haven, and the New Haven Board of Finance for an MER projected shortfall of $2,056,930. In accordance with the statute, the State Board of Education conducted an investigation with all parties present and separate investigations with the Board of Education staff and then the City staff. On September 26, 1990 and October 1, 1990, hearings were conducted on the complaint filed against the New Haven Board of Education, the City of New Haven, and the New Haven Board of Finance for failure to fund an educational program at the state's MER set forth in10-262j of the Conn. General Statutes.
On November 20, 1990, the hearing panel appointed by the State Board of Education to hear the matter, submitted a "Proposal For a Decision." On December 5, 1990, the State Board of Education adopted the "Proposal For a Decision." The "Proposal For a Decision" ordered the City of New Haven and the New Haven Board of Finance to provide written assurances within 30 days that the additional sum of $2,056,930 would be available for expenditure by the New Haven Board of Education. On December 28, 1990, the City of New Haven and the New Haven Board of Finance appealed the decision of the State Board of Education to the New Haven Superior Court and applied for a stay of the State Board of Education's decision.
On March 1, 1991, Judge Ronald Fracasse held consolidated hearings on the State Board of Education's Application For Temporary Injunction and the City of New Haven's and the New Haven Board of Finance's Application for Stay. Considering the Administrative Record, Judge Fracasse concluded as far as "irreparability", he felt the balance leaned toward the students. State Board of Education v. City of New Haven, CV 91-03108385, p. 4. He also stated that he was not rendering a final decision on the merits. State Board of Education v. City of New Haven, CV CT Page 10829 91-03108385. Judge Fracasse granted the State Board's Application For Temporary Injunction requiring the City of New Haven and the New Haven Board of Finance to immediately provide the New Haven Board of Education with $2,056,930 in additional funds. He denied the City of New Haven's and the New Haven Board of Finance's Application for Stay.
In its appeal from the action of the State of Connecticut Board of Education, the plaintiffs make the following allegations:
 In issuing its decision of December 5, 1990, the State Board of Education acted illegally, arbitrarily and in abuse of the discretion vested in it in that:
 a. It made its decision when the evidence in the record showed that the DEO 14 submitted was not issued pursuant to an action approved by the New Haven Board of Education.
 b. It took the posture that it was not concerned with the internal decision-making of the local Board of Education in constructing and allocating its budget.
 c. It allowed itself to be a force for inaccuracies in the budget approval process by creating the opportunity to be an arm for an unscrupulous or manipulative local department of education seeking to extract without concern for the overall fiscal conditions of the municipality, additional appropriations under the guise of what is legitimately required for an adequate program in education.
 d. It required that City of New Haven and the Board of Finance show inaccuracies in the budget or abuse of discretion in order to demonstrate that the line items could be allocated in order to meet the minimum expenditure requirements when they ought to make a de novo determination rather than CT Page 10830 defer to the local board.
 Wherefore, the petitioners appeal from the decision of the State Board of Education finding a shortfall in the minimum expedition requirement for New Haven fiscal year 1990-1991 and prays that the court grant such relief as is proper.
Conn. General Statutes 10-4a and 10-262j provide in part as follows: Sec. 10-4a. Educational interests of state identified. For purposes of sections 10-4, 10-4b and 10-220, the educational interests of the state shall include, but not be limited to the concern of the state (1) that each child shall have the period prescribed in the general statutes equal opportunity to receive a suitable program of educational experiences; (2) that each school district shall finance at a reasonable level at least equal to the minimum expenditure requirement pursuant to the provisions of section 10-262j an educational program designed to achieve this end; and (3) that the mandates in the general statutes pertaining to education within the jurisdiction of the state board of education be implemented.
 Sec. 10-262j. Minimum expenditure requirement. Forfeitures. (a) For the fiscal years ending June 30, 1990, June 30, 1991, and June 30, 1992, the regular program expenditures of a town shall be not less than the greater of (1) the product of (A) the target foundation multiplied by the number of total need students of the town for the prior school year and (B) the ratio of the town's grant entitlement for such year pursuant to section 10-262h divided by the town's target grant or (2) an amount equal to the sum of (A) the regular CT Page 10831 program expenditures for the town for the prior fiscal year and (B) the amount of the aid increase paid to the town as calculated pursuant to subsection (b) of this section.
According to the Constitution of Connecticut, "There shall always be free public elementary and secondary schools in the state." Constitution of Connecticut, Article Eight, Sec. 1. In order to fulfill this constitutional requirement and provide for the equalization of the educational funds available for both property rich and poor school districts, the state legislature has passed a number of statutes. In one of the statutes, the educational interests of the state are defined: "(1) that each child shall have for the period prescribed in the general statutes equal opportunity to receive a suitable program of educational experiences; (2) that each school district shall finance at a reasonable level at least equal to the minimum expenditure requirement pursuant to the provisions of section10-262j an educational program designed to achieve this end; and (3) that the mandates in the general statutes pertaining to education within the jurisdiction of the State Board of Education be implemented." Conn. General Statutes 10-4a. The State engages in a cost-sharing program with the school districts in order to ensure a "guaranteed tax base" (GTB) for the funding of education. In the fiscal year of 1976-1977, state funds and other subsidies comprised only 24% of New Haven's allocation for education, BUDGET GUIDELINES, New Haven Public Schools (1990-1991), at 7. By the 1989-1990 fiscal year, the state funds and other subsidies comprised 67% of New Haven's allocation for education. Id. at 7. New Haven and its school children have benefited from the program, and the minimum expenditure requirement (MER) is calculated to ensure that local taxes comprise a fair share of the education budget. The forms submitted to the State Board by the local boards of education provide the basis for calculating the MER. Special education and transportation costs are not considered for calculating the MER.
In addition, the state also reimburses a local or regional board of education for transportation expenses by a certain percentage. Conn. General Statutes 10-266m. The state also grants aid for special education based on a percentage of the local or regional board of education's net costs. Conn. General Statutes 10-76g. According to the State statute, "Any such board may transfer any unexpected or uncontracted-for portion of CT Page 10832 any appropriation for school purposes to any other item of such itemized estimate. Expenditures by the Board of Education shall not exceed the appropriation made by the municipality, with such money as may be received from other sources for school purposes." Conn. General Statutes 10-222.
The threshold issue is whether the appeal of the City of New Haven (City) should be dismissed as moot because the City complied with a temporary injunction and paid the alleged "shortfall" in the Minimum Expenditure Requirement (MER) to the New Haven Board of Education (NHBE) and the 1990-1991 fiscal year has since passed.
In Connecticut Foundry Co. v. International Ladies Garment Workers Union, 177 Conn. 17, 20, 411 A.2d 1, 2, the Supreme Court considered an appeal by individuals and labor organizations concerning the last of several injunctions granted by the Superior Court which limited the manner in which the defendants could picket the foundry's property. The court held that the injunction had already expired and no longer existed. In addition, the court restated the United States Supreme Court's test and concluded that the controversy is not "capable of repetition, yet evading review" since the "record before this court is devoid of any evidence demonstrating the existence of a `reasonable expectation' that these defendants will again be subjected to the action complained of here." The court found that there is an "absence of evidence establishing the likelihood of a future strike and subsequent related court action."
The question is whether the two-prong test has been met.
 A. The challenged action was in its duration too short to be fully litigated prior to its cessation or expiration.
One of the elements in determining whether the "capable of repetition, yet evading review" doctrine is met is the fact that "the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration." Judge Fracasse observed that the harm to students would be "irreparable" if the students did not receive the education that they are "clearly entitled to receive." State Board of Education v. City of New Haven, CV 91-03108385 (New Haven Superior Court, March 1, 1991, at 3) (order granting temporary injunction). Judge Fracasse also stated that, "As to the likelihood of success I am certainly not deciding that issue finally on the merits (emphasis added)." Id. CT Page 10833 at 5. The State Board of Education (State Board) petitioned the court for a temporary injunction in order to ensure that New Haven's students received an education which met the MER because the State Board recognized that awaiting the outcome of full litigation would result in the expiration of the school year and the possibility that education would be underfunded in New Haven for the 1990-1991 school year. This consideration led Judge Fracasse to issue the temporary injunction before the City's school children were "irreparably" harmed as the school term would expire with the case pending court action. The alleged condition of inadequate MER funding by the City for the 1990-1991 school year would expire before the merits of the case were fully litigated. Therefore, the present case meets the Supreme Court's first requirement that, "the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration." Weinstein, 423 U.S. at 149, 96 S.CT. at 349,46 L.Ed.2d at 353.
 B. There was a reasonable expectation that the same complaining party would be subjected to the same action again.
In order to avoid "mootness" by presenting an issue "capable of repetition, yet evading review;" the present case must also meet the second requirement that, "there was a reasonable expectation that the same complaining party would be subjected to the same action again." Id. at 149, 96 S.Ct. at 349,46 L.Ed.2d at 353. The defendants, the State Board and the NHBE, maintain that the issue is whether the New Haven Public Schools would meet the MER for the 1990-1991 school year. The defendants state that the issue became moot when the 1990-1991 school year passed. The plaintiffs, the City and the New Haven Board of Finance, state that the same complaining party will be subjected to the same action again. The plaintiffs note that the State Board now claims that the City owes an additional $989,852 for the 1990-1991 school year and $3.6 million for the 1991-1992 school year. Considering these shortfalls in New Haven's MER, one may expect the MER to continue to be a major issue concerning the City, the State Board, and the NHBE. Unlike Weinstein, where it seems unreasonable to expect that the same complaining party would be subjected to the parole system again, or Connecticut Foundry Co., where it seems unreasonable to expect that the same complaining party would be involved in a future strike and related court action, the present case involves the issue of New Haven's inadequate funding of the MER with evidence that a new CT Page 10834 MER shortfall has become an issue in the subsequent fiscal year involving both parties in the present dispute. See id. at 149,96 S.Ct. at 349, 46 L.Ed.2d at 353; See Connecticut Foundry Co.,177 Conn. at 20-21, 411 A.2d at 2-3. There is "a reasonable expectation that the same complaining party would be subjected to the same action again." Weinstein, 423 U.S. at 149,96 S.Ct. at 349, 46 L.Ed.2d at 353; See Connecticut Foundry Co.,177 Conn. at 20-21, 411 A.2d at 2-3. Therefore, the present case should not be dismissed as moot because it presents an issue which is "capable of repetition, yet evading review".
The plaintiffs claim that the present action is a "lawsuit for declaratory and injunctive relief" rather than an administrative appeal. The court is not persuaded by that argument.
The distinction between where a party may seek a declaratory judgment as opposed to taking a direct appeal was discussed in Hartford Electric Light Co. v. Water Resources Commission,162 Conn. 89, 104-105 (1971), where the court stated in part as follows:
 An action for a declaratory judgment is a proper procedure in this state for determining rights in connection with the regulations of an administrative agency. Sage-Allen Co. v. Wheeler, 119 Conn. 667, 673, 179 A. 195; Colonial House, Inc. v. Connecticut State Board of Labor Relations, 23 Conn. Sup. 30, 176 A.2d 381. Nor would it have been proper to discuss the question whether the agency had acted illegally, arbitrarily or in abuse of its discretion to allow a review of the sufficiency vel non of the evidence on which the administrative board acted would be to utilize the declaratory judgment action as an appellate review and the declaratory judgment action should not be so employed. "It is fundamental that this type of proceeding (declaratory judgment action) cannot be used as a substitute for an appeal." Mitchel v. Hammond, 252 Ala. 81, 83, CT Page 10835 39 So.2d 582; see Avery Freight Lines, Inc. v. White, 245 Ala. 618, 623, 18 So.2d 394; Floresta, Inc. v. City Council, 190 Cal.App.2d 599, 12 Cal.Rptr. 182. While one may use the declaratory judgment procedure to interpret or determine the meaning of an administrative order, it cannot be used to review the question whether the administrative agency acted correctly or erroneously in rendering its order. Mitchel v. Hammond, supra. (emphasis provided).
The rule in Hartford Electric Light Co. was reaffirmed in Aaron v. Conservation Commission, 178 Conn. 173, 177-78 (1979), where the court stated in part as follows:
 Declaratory judgment proceedings are appropriate for determining rights in connection with the regulations of an administrative agency. Hartford Electric Light Co. v. Water Resources Commission, 162 Conn. 89, 104, 291 A.2d 721; Sage Allen Co. v. Wheeler, 119 Conn. 667, 673, 179 A. 195; Sigal v. Wise, 114 Conn. 297, 301, 158 A. 891. In Hartford Electric Light Co. v. Water Resources Commission, this court commented on the difference between questions appropriate for resolution by declaratory judgment and those more appropriately dealt with by means of administrative appeal. We there observed that declaratory judgment proceedings are appropriate for determining jurisdictional issues or questions concerning the validity of the regulations of an administrative agency, while questions concerning the correctness case or of the sufficiency of the evidence can properly be resolved only by appeal. Hartford Electric Light Co. v. Water Resources Commission, supra, 104-105. (emphasis added). CT Page 10836
Conn. General Statutes 4-175(a) of the Administrative Procedure Act regulates whether the plaintiffs are entitled to a declaratory judgment by the Superior Court. That section provides in part as follows: "Declaratory judgment action to determine validity of a regulation or applicability of a statute, regulation or final decision. (a) If a provision of the general statutes, a regulation or a final decision, or its threatened application, interferes with or impairs, or threatens interfere with or impair, the legal rights or privileges of the plaintiff and if an agency (1) does not take an action required by subdivision (1), (2) or (3) of subsection (e) of section4-176, within sixty days of the filing of a petition for declaratory ruling, (2) decides not to issue a declaratory ruling under subdivision (4) or (5) of subsection (e) of said section4-176, or (3) is deemed to have decided not to issue a declaratory ruling under subsection (i) of said section 4-176
the petitioner may seek in the Superior Court a declaratory judgment as to the validity of the regulation in question or the applicability of the provision of the general statutes, the regulation or the final decision in question to specified circumstances." Therefore, the Act clearly states that the case must be submitted to the agency for a declaratory ruling before the Court may grant a declaratory judgment.
Any person may petition the agency for a declaratory ruling or the agency may initiate the process for a declaratory ruling. Conn. General Statutes 4-176(a). The Uniform Administrative Procedure Act states, "Within sixty days after receipt of a petition for a declaratory ruling, an agency in writing shall: (1) issue a ruling declaring the validity of a regulation or the applicability of the provision of the general statutes, the regulation, or the final decision in question to the specified circumstances, (2) order the matter set for specified proceedings, (3) agree to issue a declaratory ruling by a specified date, (4) decide not to issue a declaratory ruling and initiate regulation-making proceedings, under section 4-168, on the subject, or (5) decide not to issue a declaratory ruling, stating the reasons for its action." Conn. General Statutes4-176(e). In addition the Act states, "A declaratory ruling shall be effective when personally delivered or mailed or on such later date specified by the agency in ruling, shall have the same status and binding effect as an order issued in a contested case and shall be a final decision for purposes of appeal in accordance with the provisions of section 4-183." Conn. General CT Page 10837 Statutes 4-176(h). When the agency declines to issue a declaratory ruling or is "deemed to have decided not to issue a declaratory ruling," the petitioner may seek a declaratory judgment from the court. Conn. General Statutes 4-175(a).
Declaratory judgment proceedings are appropriate for determining jurisdictional issues or questions concerning the validity of the regulations of an administrative agency. What is at issue here does not involve a jurisdictional issue and does not involve a question concerning the validity of the regulations of the defendant board.
This court concludes that the present action is not one for a declaratory judgment for the following reasons: (1) The plaintiffs did not initially request a declaratory judgment action by the defendant board; (2) the suit brought by the plaintiffs does not in the prayer for relief seek a declaratory ruling; (3) a declaratory judgment cannot be used to review the question of whether an administrative agency acted correctly or erroneously in rendering its order.
SCOPE OF REVIEW
Under Conn. General Statutes 4-183(g):
 The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) in violation of constitutional or statutory provisions;
 (2) in excess of the statutory authority of the agency;
(3) made upon lawful procedure;
(4) affected by other error of law; CT Page 10838
 (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) arbitrary or capricious or characterized by abuse or discretion or clearly unwarranted exercise of discretion.
Although the court may not retry the evidence or substitute its judgment for that of the agency on questions of fact, the court must apply governing principles of law. Connecticut Hospital Association, Inc. v. Commission on Hospitals and Health Care, 200 Conn. 133, 140 (1986). While the interpretation of statutes is ultimately a question of law, it is the well-established practice of the Connecticut courts to "accord great deference to the construction given (a) statute by the agency charged with its enforcement." Griffin Hospital v. Commission on Hospitals and Health Care, 200 Conn. 489, 496
(1986) and cases cited.
The court must examine the record of the hearing before the defendant Board to determine whether the conclusions reached by the agency are supported by the evidence that was before it. Conn. General Statutes 4-183(g)(5). The question is not whether the trial court would have reached the same conclusions, but whether the record before the agency supports its action. O'Donnell v. Police Commission, 174 Conn. 422, 426 (1978); Conley v. Board of Education, 143 Conn. 488, 492 (1956). This principle, known as the "substantial evidence rule" is similar to the "sufficiency of evidence" rule applicable to jury trials. Evidence is sufficient to sustain an agency finding if it affords a substantial basis from which the facts found by the agency can reasonably be inferred; there must be enough evidence to justify, if the trial were to a jury, refusal to direct a verdict. Lawrence v. Kozlowski, 171 Conn. 705, 713, cert. denied, 431 U.S. 969
(1976).
Further, in reviewing the decision of an administrative Board, the court must decide whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally, or has abused its discretion. Conn. General Statutes 4-183(g)(6).
Finally, the court must examine whether the agency has CT Page 10839 engaged in a "clearly unwarranted exercise of discretion." Conn. General Statutes 4-183(g)(6). One factor to be weighed heavily is whether or not "considered reasons" for the decision were presented by the agency in its decision. SR Sanitation Services, Inc., supra, at 311.
The Court, in Griffin Hospital v. Commission on Hospitals 
Health Care, 200 Conn. 489, 496-98 (1986), in addressing the judicial scope of review under the Uniform Administrative Procedure Act, Conn. General Statutes 4-166 et seq., stated in part as follows:
 With regard to questions of fact, it is neither the function of the trial court nor of this court "to retry the case or to substitute its judgment for that of the administrative agency." Madow v. Muzio, 176 Conn. 374, 376, 407 A.2d 997 (1978); Hospital of St. Raphael v. Commission on Hospitals Health Care, 182 Conn. 314, 318, 438 A.2d 9103
(1980); See General Statutes 4-183(g). "Judicial review of the conclusions of law reached administratively is also limited. The court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. Robinson v. Unemployment Security Board of Review, 181 Conn. 1, 5, 434 A.2d 293 (1980); Cervantes v. Administrator, 177 Conn. 132, 134, 411 A.2d 921 (1979); Burnham v. Administrator, 184 Conn. 317, 322, 439 A.2d 1008 (1981). The present appeal is from the decision of the trial court. We review that decision only to determine' whether it was rendered in accordance with the Uniform Administrative Procedure Act. Conn. General Statutes 4-183(g).
 Much of this appeal concerns the hospital's claims that it was denied due process by the alleged failure of the CT Page 10840 commission to observe its governing statutes and regulations. In this regard a final point deserves special emphasis. Although the interpretation of statutes is ultimately a question of law; Connecticut Hospital Assn., Inc. v. Commission on Hospitals Health Care, 200 Conn. 133, 140, 509, A.2d 1050 (1986); it is the well established practice of this court to "accord great deference to the construction give [a] statute by the agency charged with its enforcement." Corey v. Avco-Lycoming Division, 163 Conn. 309, 326, 307 A.2d 155 (1972) Loiselle, J., concurring), cert. denied, 409 U.S. 1116, 93 S.Ct. 903, 34 L.Ed.2d 699 (1973). This principle applies with even greater force to an agency's interpretation of its own duly adopted regulations.
 The commission advanced several reasons in support of its September 15, 1983 decision to disallow the proposed increase in nonvolume expenses. We must uphold the commission's decision if any of those reasons are sufficient to justify the action taken. See General Statutes 4-183(g)(5); Lawrence v. Kozlowski, 171 Conn. 705, 713-14, 372 A.2d 110 (1976); cert. denied, 431 U.S. 969, 97 S.CT. 2930, 53 L.Ed.2d 1066
(1977).
The Decision and Order of the defendant Board provided in part as follows:
 The evidence presented by the Commissioner establishes that the New Haven school district is not financed at a reasonable level at least equal to the minimum expenditure requirement described in Conn. General Statutes 10-262j. The New Haven Board of Education has failed or is unable to CT Page 10841 meet the requirements of Conn. General Statutes 10-262j because the City of New Haven and the New Haven Board of Finance have failed to appropriate sufficient funds to allow the New Haven Board of Education to meet its legal obligation. The City of New Haven and the New Haven Board of Finance are responsible for the failure or inability of the New Haven Board of Education to live up to the requirements of Conn. General Statutes 10-262j. The Commission has also shown that in order to meet the requirements of Conn. General Statutes 10-262j, the New Haven Board of Education must be provided with an additional appropriation in the amount of $2,056,930 and that said sum must be spent on MER eligible activities.
Acting pursuant to the authority vested in the Board by Conn. General Statutes 10-4b(b), the Board hereby enters the following orders:
1. The City of New Haven and the New Haven Board of Finance shall, within thirty days of this order, provide the New Haven Board of Education with written assurances that $2,056,930 in additional money beyond that which has already been appropriated to the New Haven Board of Education will be available for expenditure by the New Haven Board of Education on MER-eligible activities during the 1990-1991 school year.
2. The City of New Haven and the New Haven Board of Finance shall, within the same 30 days period, provide adequate written assurances to the Commissioner that the additional financial commitment called for by the preceding paragraph has been made.
3. Pursuant to the provisions of Conn. State Agency Regs. Education, 10-46b-10(b), within 30 days of this order the New Haven Board of Education shall develop and file with the Commissioner a remedial plan acceptable to the Commissioner which demonstrates that the additional sum of $2,056,930 which CT Page 10842 will be made available to the New. Haven Board of Education pursuant to the above orders will be budgeted to and spent or MER-eligible activities in the 1990-1991 school year.
The plaintiffs, in their brief, raise the following claims:
The State Board of Education (i) deferred to the Superintendent's "estimates," (ii) ignored a lengthy and as yet unresolved history of disputes about overspending at the New Haven Board of Education, (iii) ignored a history of brinkmanship by the New Haven Board of Education when confronted with deficits in its annual budget, (iv) refused to honor the legal burden or the New Haven Board of Education to adjust its expenditures to comply with the total municipal appropriation, (v) refused to in any way hold the local Board of Education accountable for its own failure (negligent or deliberate) to anticipate the additional expenditures for special education, and (vi) refused to in any way hold the local Board of Education accountable for its diversion of monies previously appropriated in the expectation that they would be spent on MER-eligible programs. The State Board now claims that the City owes an additional $989,852 for the 1990-1991 school year and $3.6 million for the 1991-1992 school year.
These claims will be discussed seriatim:
(1) The plaintiffs' claim that the defendant Board deferred to the Superintendent's "estimates".
Examining the administrative record in the present case, the Court finds no evidence to support the plaintiffs' claim that the State Board inappropriately "deferred" to the Superintendent's estimates. The plaintiffs were given the opportunity to prepare their estimates and financial figures for the hearing, and the presentation of these figures constituted a substantial portion of the hearing. (Record, p. 147-229). The plaintiffs admitted that they had no knowledge of the IEPS for the 1990-1991 school year, and the State Board would not have inappropriately concluded that the plaintiffs lacked expertise and essential knowledge in constructing an education budget. (Record, p. 201). In its final decision, the State Board did conclude that the NHBE could be expected to have more accurate and up-to-date information. (Decision and Order of the Board, p. 10). The State Board was completely within its rights to find NHBE's figures more credible or precise. It does not appear that the CT Page 10843 State Board abused its discretion or acted arbitrarily based or the administrative record.
(2) The claim that the State Board of Education ignored a lengthy and as yet unresolved history of disputes about overspending at the New Haven Board of Education.
There is absolutely no evidence in the record to support the plaintiffs' claims that the State Board ignored a lengthy and as yet unresolved history of disputes about overspending at the NHBE, ignored a history of brinkmanship by the NHBE when confronted with deficits in its annual budget, refused to honor the legal burden on the NHBE to adjust its expenditures to comply with the total municipal appropriation, refused to in any way hold the NHBE accountable for its failure to anticipate the additional expenditure for special education, and refused to in any way hold the NHBE accountable for its diversion of monies previously appropriated in the expectation that they would be spent on MER-eligible programs. Although the plaintiffs were given an adequate opportunity to prepare for the hearing and an opportunity to present additional evidence after the final decision, as provided by "reconsideration"; the record does not contain sufficient evidence of past disputes involving "overspending" at the NHBE. Conn. General Statutes 14-181a(B); (Decision and Order of the Board, p. 7). The determination of issues of fact, such as the sufficiency of the evidence, is left to the discretion of the State Board. See Williams,175 Conn. at 414, 399 A.2d at 836. As stated previously, the Court's review is limited to the administrative record in the present case.
(3) The plaintiffs' claim that the State Board of Education ignored a history of brinkmanship by the New Haven Board Education when confronted with deficits in its annual budget.
As for the plaintiffs' brinkmanship charge against the NHBE concerning the NHBE's handling of its budget deficits, the plaintiffs appear to claim that the NHBE deliberately underfunds "high-profile" areas of the budget in order to secure public support and place political pressure on New Haven to allocate more funds to the NHBE. Although the plaintiffs assert that non-local funds should be used for special education in order to provide more local dollars to meet the City's MER; the State Board decided that this allocation is entirely within the discretion of the NHBE, and there is no evidence provided to suggest that the NHBE is deliberately allocating funds in such a CT Page 10844 way as to produce shortfalls in the MER. In addition, the State Board concluded that funds made available through correction of various budget items "could", as opposed to "must", be allocated to MER-eligible activities. (Decision and Order of the Board, p. 7). Conn. General Statutes 10-220(a). The plaintiffs are unable to prove their allegation based on the record.
(4) The plaintiffs' claim that the State Board of Education refused to honor the legal burden on the New Haven Board of Education to adjust its expenditures to comply with the total municipal appropriation.
According to the statutes and laws considered previously the State Board reasonably concluded that there is no legal burden for the NHBE to lower its expenditures when such an action would result in the underfunding of programs which are mandate by statute to be provided at certain minimum levels. Special education programs must be maintained at levels which are determined according to the participating individuals establishing the IEPs for each student. Therefore, the State Board reasonably determined that the burden is upon the plaintiffs to provide for programs which are required by statute.
This claim was fully addressed by the Decision and Order of the Board when it stated in part as follows:
 We recognize that the claims being made by the City are claims that certain amounts of money allegedly included in the budget as non-MER eligible expenses are inappropriately placed in that category. The City is asking that this Board shift these inappropriately allocated dollars to MER-eligible activity thereby eliminating or reducing the MER shortfall. In dealing with this claim the Board is confronted by the City's unquestionably appropriate admission that the claim it is making is that the funds which will be available through correction of these budget items "could", as opposed to "must" be allocated to MER eligible activities. It is important to recognize that any newly found dollars which become CT Page 10845 available as a result of corrections of individual budget items "could" be allocated by the local board to non-MER eligible as well as MER eligible activities. Unless a local board of education abuses its discretion in making such a real location, this Board would not interfere with the local board's decision. Thus in most cases a finding that a non-MER eligible budget item has been overstated will not necessarily allow this Board to assume that the new found dollars will be allocated to a MER eligible activity.
 Having said this, we must go on to say that under the unique facts presented by this case we are convinced that the NHBE would allocate any funds inappropriately budgeted to a non-MER eligible cost to a MER eligible cost. We reach this conclusion from the way in which the NHBE adjusted its budget in response to the appropriation actually made by the City. According to NHBE's Executive Director for Business and Finance the line items in the budget for the salaries for regular education personnel were reduced by 5-6% below the true cost, considering the individuals who now hold these positions. However, no similar reduction was made in the salaries for special education personnel. The result is that the cost for regular education personnel will exceed the amount which has been budgeted by NHBE absent some intervention. The same is not true of the cost for special education personnel. Because of the way in which NHBE absorbed the City's limited appropriation, we are confident that the NHBE would reallocate any dollars which are inappropriately allocated to non-MER eligible items in a way which offsets CT Page 10846 the virtually inevitable over expenditure of their regular education personnel budget.
The defendant Board went on to discuss in specific detail the claims of the City of New Haven regarding items of non-MER eligible costs that the City sought to have the defendant Board correct with an appropriate reallocation to MER eligible activities. The defendant Board discussed the 1989-1990 tuition expenses, the claim of a reduction of $1 million dollars in special education administration, the claim of a reduction of $900,000 in gifted and talented program budget, the claim in vacancies in special education positions, the claim in special education tuition and transportation estimates, and the claim in IMPACT aid. The defendant Board adequately addressed and denied each of those claims of the plaintiffs.
(5) The plaintiffs' claim that the State Board of Education refused in any way to hold the local Board of Education accountable for its own failure (negligence or deliberate) to anticipate the additional expenditures for special education. There is no evidence in the record to substantiate this claim.
(6) The plaintiffs' claim that the State Board of Education refused in any way to hold the local Board of Education accountable for its diversion of monies previously appropriated in expectation that they would be spent on MER-eligible programs.
In refusing to hold the NHBE accountable for its diversion of monies previously appropriated by the city in the expectation that the funds would be spent on MER-eligible programs, the state Board has appropriately granted the NHBE the discretion it has by state law. The State Board may properly refuse to become the vehicle of the plaintiffs in forcing the NHBE to spend its funds according to the wishes of the plaintiffs. State law clearly grants the discretion to local and regional boards of education.
The Court has reviewed the record in this case and concludes that none of the substantial rights of the appellant have been prejudiced. The Court find that the conclusions reached by the defendant Board are supported by the evidence that was before it. There is no evidence in the record to conclude that the Board acted unreasonably, arbitrarily, illegally or has abused its discretion in rendering its decision. The Board has given CT Page 10847 "considered reasons" for its decisions and those reasons are all supported by the record and are sufficient to justify the action taken.
ORDER
The appeal is ordered dismissed.
SIDNEY AXELROD, JUDGE