**KENTUCKY UNEMPLOYMENT INSURANCE COMMISSION and Earl King, Appellants,**

v.

**AMERICAN NATIONAL BANK & TRUST COMPANY, Appellee.**

Court of Appeals of Kentucky.

April 26, 1963.

Paul E. Tierney, Clarence E. Powell, Forest Smith, Frankfort, for appellants.

Marshall Funk, Bowling Green, for appellee.

WILLIAMS, Judge.

The appellee, American National Bank & Trust Company, commenced renovation of its permanent premises and in order to carry on business as usual moved to another location until the renovation was completed. It was found necessary to employ a guard at the temporary location. Earl King was hired and worked for approximately one year until the Bank returned to its renovated permanent premises and his services were no longer needed. Upon termination of his employment King filed an application for unemployment insurance benefits. The Kentucky Unemployment Insurance Commission determined the claim was valid and that all payments made were to be chargeable to the reserve account of the Bank. The Bank protested the payments and charges on the ground that King had voluntarily quit his most recent work without good cause. An appeal to the Warren Circuit Court resulted in a reversal of the order of the Kentucky Unemployment Insurance Commission. It was held that King voluntarily quit his employment within the meaning of the statutes and that the Bank's reserve account should be relieved of charges for benefits paid. This appeal results.

The sole issue before us is whether a worker who leaves temporary work upon completion of the job voluntarily quits such work within the meaning of the statutes involved. KRS 341.370(1) provides:

"According to the circumstances in each case, a worker shall be disqualified from receiving benefits or serving a waiting period:

\* \* \* \* \* \*

"(b) For not less than six nor more than sixteen weeks immediately following the commission of the disqualifying act, if \* \* \*

"(2) \* \* \* (c) He has left his most recent suitable work voluntarily without good cause."

KRS 341.530(3) provides:

"Notwithstanding the provisions of subsection (2) of this section, benefits paid to an eligible worker and chargeable to an employer's reserve account under such subsection shall be charged against the pooled account if such worker was discharged by such employer for misconduct connected with his most recent work for such employer, or voluntarily left his most recent work with such employer without good cause attributable to the employment, and the employer within a reasonable time, as prescribed by commission regulation, notifies the division, in writing, of the alleged voluntary quitting or discharge for misconduct."

The effect of the judgment of the Warren Circuit Court is that an employee voluntarily quits when he is hired for a specific time and quits at the end of the time, for at the beginning he agrees to voluntarily quit at that time. The fact that he stands ready for new employment imposes no obligation on his former employer. But the appellants argue that the employee had no alternative or choice concerning his employment. His

job became unnecessary and was abolished by the Bank which was the sole cause of his failure to continue to work.

A similar question was before this Court in Kentucky Unemployment Insurance Commission v. Kroehler Mfg. Co., Ky., 352 S.W.2d 212. In that case the question was whether an employee voluntarily quit his employment by reason of the fact he accepted the provisions of a retirement plan which required him to retire at age 65. We said:

> "The purpose of the General Assembly in the enactment of such legislation (1938 Acts, Chapter 50, section 2) was to provide benefits for only those employees who have been forced to leave their employment because of forces beyond their control and not because of any voluntary act of their own."

It was held that retirement of the employee constituted a voluntary quitting of employment which was not attributable to the employment and the reserve account of the employer should be relieved of any charges for benefits paid to the employee.

At first blush it appears that the reasoning of the Kroehler case will necessarily dictate the result in this one. There is a distinguishable difference between the two however. The statutes dictate that the employee must have voluntarily left his most recent work without good cause attributable to the employment. In Kroehler he agreed to retire and did retire at age 65, thus leaving his work and taking himself out of the labor pool. The work was there to do but he quit. In this case King accepted employment which he knew was temporary but he did not agree to leave the work. When the need to have the work done ceased to exist, he became unemployed. But had the need for the work continued he would have continued to perform.

▇ Thus it is our opinion that a correct interpretation of the statute is that an employee who accepts a job which he knows in advance to be temporary does not voluntarily leave when the job ceases to exist. There is language in a New Jersey case, Campbell Soup Company v. Board of Review, etc., 13 N.J. 431, 100 A.2d 287, which sustains that view. That Court said that employees frequently take jobs which employers tell them at the time will engage their services for only a stipulated period. But, even so, the voluntary acceptance of such work does not constitute a voluntary leaving at the end of the agreed time. The New Jersey Court said the leaving was involuntary in the statutory sense.

▇ The appellants also argue that the agreement to quit when the job no longer exists is prohibited by KRS 341.470, which provides that no agreement by a worker to waive, release or commute his rights to benefits shall be valid. The argument is answered in Kentucky Unemployment Insurance Commission v. Kroehler, supra, which holds such an agreement as one for the voluntary termination of employment and does not constitute a waiver.

Judgment reversed.