IRENE F. CERVANTES *v.* ADMINISTRATOR,
UNEMPLOYMENT COMPENSATION ACT,
ET AL.

COTTER, C. J., LOISELLE, BOGDANSKI, PETERS and PARSKEY, Js.

Argued January 10—decision released March 20, 1979

*Donald E. Wasik,* assistant attorney general, with whom, on the brief, were *Carl R. Ajello,* attorney general, and *Thomas J. Daley,* assistant attorney general, for the appellant (named defendant).

*Barclay Robinson, Jr.,* for the appellee (defendant Symphony Society of Greater Hartford, Inc.).

COTTER, C. J.  The plaintiff, Irene F. Cervantes, entered into an employment contract on September 30, 1975, with the defendant Symphony Society of Greater Hartford, Inc., hereinafter the employer, wherein she agreed to perform services as a violist

from October 1, 1975, through May 5, 1976. Ms. Cervantes was to play in ten concerts and was to be paid a specified amount for each concert and for each hour of rehearsal. Upon completion of her contractual obligations, she filed for unemployment compensation benefits as of May 16, 1976, and was awarded benefits by the defendant-administrator, hereinafter the administrator, from that date through the week ending June 19, 1976, when she obtained employment as a violist in North Carolina.

An appeals referee sustained the award of the administrator, and the employment security board of review, hereinafter the board, affirmed the decision of the referee and dismissed the employer's appeal. The employer appealed to the Superior Court from the decision of the board of review. See General Statutes § 31-249b.

Although the court agreed with the board's conclusion that the plaintiff was available for work within the meaning of § 31-235 (2) of the General Statutes,[1] it sustained the employer's appeal and rendered judgment for the employer upon finding that the plaintiff was not entitled to compensation because the subordinate facts found by the board did not support its conclusion that the plaintiff's employment was involuntarily terminated.[2] The administrator appealed to this court from that judgment.

[1] Since the trial court properly considered the appeal solely on the record returned by the board and made no independent finding of facts, we have consulted the memorandum of decision to ascertain the conclusions on which the trial court based its judgment. See *Housatonic Terminal Corporation* v. *Planning & Zoning Board,* 168 Conn. 304, 305, 362 A.2d 1375.

[2] The court further concluded that the plaintiff left her employment without sufficient cause connected with her work. See General Statutes § 31-236 (2) (a).

In appeals of this nature, the Superior Court does not try the matter de novo; it is not its function to adjudicate questions of fact, nor may it substitute its own conclusions for those of the board. *Guevara* v. *Administrator,* 172 Conn. 492, 495, 374 A.2d 1101. Rather, it is the function of the court to determine, on the record, "whether there is a logical and rational basis for the decision of the [board] or whether, in the light of the evidence, [the board] has acted illegally or in abuse of [its] discretion. *Bartlett* v. *Administrator,* 142 Conn. 497, 505, 115 A.2d 671; *Stapleton* v. *Administrator,* 142 Conn. 160, 165, 112 A.2d 211." *Taminski* v. *Administrator,* 168 Conn. 324, 326, 362 A.2d 868.

General Statutes § 31-236 (2) (a) provides that an individual claimant is ineligible for benefits if "he has left suitable work voluntarily and without sufficient cause connected with his work." The trial court concluded that the plaintiff was disqualified from receiving benefits on the basis of the above exception. The record, however, which was before the trial court, indicates that the employer in the present case offered the plaintiff a position as a violist for ten concerts, and the employer, not the plaintiff, set the expiration date of the contract.[3] The plaintiff had no choice in deciding the term or duration of the contract, and thus did not have the option to continue working beyond May 5, 1976.[4]

[3] As the factual findings of the board state, symphony and concert musicians do not obtain employment by making their own independent work search. Symphony and concert orchestras generally seek out and contact the musicians from lists of union musicians.

[4] The employer argues, in this court, that the factual record is devoid of any evidence in support of the board's assessment of the circumstances surrounding the plaintiff's execution of the contract in question. We note, however, that in the employer's brief filed with the trial court, the following statements of fact are asserted: the symphony's concert season extends from the first week of October

On that basis, the board concluded that the termination of the plaintiff's employment was involuntary and, hence, she was eligible for benefits under § 31-236 (2) (a).

In support of the judgment, the employer argues that the trial court was correct in concluding that the plaintiff, in effect, voluntarily contracted to be unemployed on May 5, 1976. Although there is little decisional authority on the unique question presented under the facts of this case, we are persuaded by the reasoning of those cases which have sustained an award of compensation under similar circumstances. "[E]mployees frequently take jobs which employers tell them at the time will engage their services for only a stipulated period. But, even so, the voluntary acceptance of such work does not constitute a voluntary leaving at the end of the agreed time." *Kentucky Unemployment Ins. Commission* v. *American National Bank & Trust Co.,* 367 S.W.2d 260, 262 (Ky. App.); *Campbell Soup Co.* v. *Board of Review,* 13 N.J. 431, 436, 100 A.2d 287; contra, *Wilmington Country Club* v. *Unemployment Ins. Appeal Board,* 301 A.2d 289, 290 (Del. Supr.).

This case does not involve a situation where the termination of employment is based upon an agreement between a union and the employer. See *Schettino* v. *Administrator,* 138 Conn. 253, 83 A.2d 217. In such cases, there is a division of authority

to the first week of May and consists of ten concerts; the employer enters into employment contracts with musicians whereby the musicians agree to rehearse and perform at each of the concerts until the season's end at which time the employment terminates; and it was the employer, not the plaintiff, which set the term of the contract to be offered. Those statements may properly be considered admissions of fact by the employer in the present case. *Collens* v. *New Canaan Water Co.,* 155 Conn. 477, 496, 234 A.2d 825.

whether the termination is voluntary or involuntary —some courts holding that the union is the employee's agent for all purposes, and thus a properly negotiated and ratified agreement is deemed to be the voluntary act of each individual member; see e.g., *Bergseth* v. *Zinsmaster Baking Co.*, 252 Minn. 63, 89 N.W.2d 172; and other courts rejecting a strict "agency" approach and requiring an ad hoc inquiry to determine the position of each side at the bargaining table. See, e.g., *Warner Co.* v. *Unemployment Compensation Board of Review*, 396 Pa. 545, 153 A.2d 906; see cases collected in annot., 90 A.L.R.2d 835; 76 Am. Jur. 2d, Unemployment Compensation § 65. The present case, however, does not involve negotiations by union representatives on behalf of the plaintiff which, presumably, would enhance the plaintiff's bargaining position with her employer. Rather, due to the nature of the plaintiff's work, she was bound either to accept or reject the contract term offered by the employer. Under those circumstances, it cannot be said that the board's conclusion that the plaintiff had not voluntarily terminated her employment was so unreasonable as to justify judicial interference.[5] See *DaSilva* v. *Administrator*, 175 Conn. 562, 565, 402 A.2d 755.

The purpose of the unemployment compensation act is to provide income for the worker earning nothing because he is out of work through no fault or act of his own; *Schettino* v. *Administrator*, supra, 257; *Kelly* v. *Administrator*, 136 Conn. 482, 487, 72

---

[5] Since we conclude that the board's determination that the plaintiff had not voluntarily left her employment was reasonable, it is unnecessary to address the trial court's conclusion that the plaintiff left work without sufficient cause connected with her employment. General Statutes § 31-236 (2) (a).

A.2d 54; and its provisions are to be construed liberally as regards beneficiaries in order that it may accomplish its purpose. *Taminski* v. *Administrator,* supra, 328. Although we hold that, due to the nature of the plaintiff's work and the particular circumstances of this case, the trial court erred in concluding that the plaintiff's termination of employment was voluntary, we do not intend to imply that, under other circumstances, an employee cannot, by contractual agreement, agree to terms which effect a voluntary ending of employment on a future date. Rather, the particular facts of each case must be examined to determine whether the termination of employment is truly "voluntary" within the intent and meaning of the unemployment compensation act.

There is error, the judgment is set aside and the case is remanded to the trial court with direction to dismiss the appeal of the defendant Symphony Society of Greater Hartford, Inc.

In this opinion the other judges concurred.