## Joshua Lincoln v. Department of Employment and Training, Shelburne Veterinary Hospital, Employer

[592 A.2d 885]

No. 90-019

Present: Allen, C.J., Gibson, Dooley and Johnson, JJ.

Opinion Filed April 12, 1991

 

*Eileen M. Blackwood* of *Paul, Frank & Collins, Inc.*, Burlington, for Defendant-Appellant.

*Brooke Pearson*, Montpelier, for Defendant-Appellee.

**Allen, C.J.** Claimant sought unemployment compensation from an animal hospital where he had worked during May, 1987. The Employment Security Board rejected the employer's contention that claimant had left its services voluntarily, with the result that the employer incurred unemployment tax liability. We reverse and remand.

Dr. Steven Metz, owner and president of Shelburne Veterinary Hospital, Inc. (SVHI), hired claimant, Dr. Joshua Lincoln, as a so-called relief veterinarian during May, 1987. Claimant was to be responsible for paying his own taxes and was to receive a flat daily rate of $150. At the outset the length of this relationship was agreed to be one month, at the end of which their relationship would end.

Before this relationship, claimant had performed similar services as a relief veterinarian for other practices. After claimant began working, Dr. Metz offered him an annual salary of $25,000 if he would remain past the one-month period as an associate veterinarian. Because he had earned annual wages of about $33,000 as a full-time employee of another veterinary hospital, claimant rejected this offer as too low.

After leaving SVHI, Dr. Lincoln obtained another job which did not begin until July, 1987. He filed for, and received, unemployment compensation for the interim period, which was charged to SVHI, his last employer. The chief appeals referee sustained the decision of the chief claims adjudicator, concluding that Dr. Lincoln was not disqualified for benefits under 21 V.S.A. § 1344(a)(2)(A) because he had not left the employ of SVHI "voluntarily without good cause attributable to [SVHI]."

Following the referee's decision, the employer requested that the evidence be reopened to clarify the testimony concerning the reason for the four-week limitation on Dr. Lincoln's employment. Dr. Metz sought to present additional testimony of his own and of his two nurses that Dr. Lincoln's own time commitments were the reason for the four-week employment limitation. That request was refused, and the Board affirmed the referee's decision. The present appeal followed.

The issue on appeal is the correctness of the Board's conclusion that, having accepted temporary employment, Dr. Lincoln was not disqualified for leaving SVHI's employ "voluntarily without good cause attributable to [SVHI]." In reaching this conclusion, the Board stated:

> Even assuming that the sole reason why the employment lasted no more than four weeks was the insistance [sic] of the claimant, the relevant fact is that the two parties agreed, *for whatever reason,* to a term of employment lasting a fixed duration. In the absence of any showing that the employer had continued work available for the claimant on the same terms and conditions, as opposed to the changed $25,000 per year permanent relationship offered to the claimant, the claimant simply cannot be disqualified for unemployment compensation benefits at the expiration of the agreed upon term of employment. (Emphasis added.)

In sum, the Board concluded that as long as there is mutual agreement to a fixed term of employment an employee cannot be disqualified for benefits, even if the employee rather than the employer insists on the fixed term. The Board drew that conclusion from our holding in *Anthony Adams AIA Architect v. Department of Employment Security,* 139 Vt. 413, 430 A.2d 446 (1981), where we stated:

> The question of whether a person hired for a specific term voluntarily leaves at the end of that term so as to disqualify him from unemployment benefits is one of first impression before this Court. This issue has been addressed in several other jurisdictions, however. These cases have generally held that an employee who accepts a temporary position does not leave that position voluntarily at the end of the agreed period. We agree with this view.

*Id.* at 414, 430 A.2d at 447 (citations omitted).

In *Anthony Adams* the temporary employment ended because "the job was completed and the work terminated." *Id.* Where there is an agreement for temporary employment and no evidence suggesting that it was the employee who asked that the term of employment be limited, it may be presumed that the employer dictated the terms of the agreement. Given the remedial nature of our unemployment compensation legislation, see *In re Moore*, 128 Vt. 581, 586, 269 A.2d 853, 856 (1970), this presumption is a fair one.

The Board read *Anthony Adams* as rendering involuntary any departure from temporary employment, regardless of whether it was the employee or the employer who sought and imposed the limitation on the term of employment. Although that is a fair reading of the broad language of our holding, it is not consistent with the intention of the Legislature in cases where it is clear that employment is temporary because the employee advises the employer that he or she will be unavailable for work beyond a certain date. In *Calkins v. Board of Review of Department of Employment Security*, 141 Ill. App. 3d 36, 40–41, 489 N.E.2d 920, 923 (1986), involving a statute very similar to § 1344,* the court reversed the administrative appeals board, holding:

> throughout this proceeding the Department has accepted as factual . . . [that] "(claimant) did not want any additional work or any employment beyond the fill in work which she agreed to do." . . . An unrefuted statement that the claimant did not desire any more work than she anticipated performing for the plaintiff serves to effectively bar her claim for unemployment benefits.

In *Cervantes v. Administrator, Unemployment Compensation Act*, 177 Conn. 132, 411 A.2d 921 (1979), upholding unemployment compensation to a violinist employed by an orchestra for a series of ten concerts, the court stated:

---

* The Illinois statute in question, Ill. Rev. Stat. ch. 48, para. 431 A. (1983), stated:
 An individual shall be ineligible for benefits for the week in which he has left work voluntarily without good cause attributable to the employing unit and, thereafter, until he has become reemployed and has had earnings equal to or in excess of [Illinois requirement].

Although we hold that, due to the nature of the plaintiff's work and the particular circumstances of this case, the trial court erred in concluding that the plaintiff's termination of employment was voluntary, we do not intend to imply that, under other circumstances, an employee cannot, by contractual agreement, agree to terms which effect a voluntary ending of employment on a future date. Rather, the particular facts of each case must be examined to determine whether the termination of employment is truly "voluntary" within the intent and meaning of the unemployment compensation act.

*Id.* at 137, 411 A.2d at 923.

In none of the cases relied on in *Anthony Adams* did it appear that employment was temporary because the employee had stated that he or she would be unavailable for work beyond a certain date and wanted the employment to be temporary. In *State Department of Industrial Relations v. Montgomery Baptist Hospital, Inc.*, 359 So. 2d 410, 413 (Ala. Civ. App. 1978), for example, the employee agreed that his employment with the hospital would end after a nine-month period, but he did not request such limited term. Similarly, in *Kentucky Unemployment Insurance Comm'n v. American National Bank & Trust Co.*, 367 S.W.2d 260 (Ky. 1963), the claimant had been hired as a guard at a temporary location during renovation of the permanent premises. The job ended when renovations were completed, and there was no suggestion that the claimant stated he would be unavailable to continue his services.

■■ We now hold that an employee who accepts a temporary position does not leave that position involuntarily at the end of the agreed period if it is shown that the employee requested temporary employment in light of his or her needs or availability. This analysis should be a practical one and should look beyond inferences about voluntariness that might be gleaned from the mere existence of an employment agreement. An employee's entry into an agreement for a temporary period of employment, without more, simply tells us that the employee is willing to accept all of the employer's terms and conditions; it tells us little about the employee's willingness or availability to serve beyond the agreed-upon term if an extension had been offered. So where the only evidence is an agreement for a lim-

ited term of employment, the rule in *Anthony Adams* compels the conclusion that the claimant has not left the employment voluntarily. As the court said of temporary work in *Kentucky Unemployment,* "the voluntary acceptance of such work does not constitute a voluntary leaving at the end of the agreed time." 367 S.W.2d at 262.

But where an employee has requested an agreement for a limited term of employment because of unwillingness or unavailability to serve longer, nothing in our statute compels the conclusion that such employee at the end of the temporary work leaves the employment involuntarily.

The Department of Employment and Training (DET) argues that the employer did not present evidence tending to prove that Dr. Lincoln imposed limits on the length of his service with SVHI and that the findings by the chief appeals referee, on which the Board's decision is based, were consistent with the evidence. Though Dr. Metz testified that the reasons for the agreement for a limited employment included "time commitments that [Dr. Lincoln] had," there was other evidence, including Dr. Lincoln's own testimony, that supported a finding that the limited employment agreement was Dr. Metz's choice. However, following the decision by the chief appeals referee, SVHI sought by letter to reopen the proceedings to allow presentation of additional evidence by employees of Dr. Metz that Dr. Lincoln had said that the one-month period was "all he could commit." The chief appeals referee declined to reopen proceedings, and the Board in its decision, relying on *Anthony Adams,* stated that "[e]ven assuming that the sole reason why the employment lasted no more than four weeks was the insistance [sic] of the claimant, the relevant fact is that the two parties agreed, for whatever reason, to a term of employment lasting a fixed duration."

█ The decision whether to remand to the referee for the taking of additional evidence is within the Board's sound discretion. *Miner v. Department of Employment & Training,* 144 Vt. 211, 213, 475 A.2d 233, 235 (1984). But there are strong reasons for a different outcome in the present case. First, as the Board pointed out in its decision, *Anthony Adams* appeared to make the question of who sought initial limits on the length of the employment irrelevant. Our reading of 21 V.S.A. § 1344(a)(2)(A)

modifies our holding in *Anthony Adams* and makes this question relevant. DET argues that Dr. Metz should have supported all of his legal theories with adequate evidence at the hearing before the appeals referee. Although we rarely allow a litigant to supplement a trial record where there has been a full and adequate opportunity to present evidence in the first instance, *Houran v. Preferred Accident Insurance Co. of New York,* 109 Vt. 258, 268–70, 195 A. 253, 257–58 (1938), the record in this case shows that Dr. Metz addressed all of the issues raised by the chief appeals referee during the hearing. Moreover, Dr. Metz was at the time acting pro se and necessarily relying on the referee for guidance as to the nature of the major issues under Vermont's unemployment compensation statute. Only upon issuance of the referee's decision did it appear that evidence on who insisted upon the limited employment might be relevant, and even then *Anthony Adams* appeared to dictate the result.

█ In these circumstances it is appropriate to remand the matter to the Board, with directions to allow the employer to present additional evidence on whether the limitation on the length of the employment was requested by Dr. Lincoln because of his unwillingness or unavailability to serve longer, so that his departure from SVHI was "voluntarily without good cause attributable to such employing unit."

█ SVHI also argues that the Board erred in concluding that Dr. Lincoln did not refuse suitable work at the end of the one-month term when he rejected an offer of permanent employment at a salary below the rate for his temporary employment and below the rate of his previous permanent employment. The Board concluded that the offer of a permanent position at a considerable reduction from either his temporary per-diem rate or his prior salary level was not an offer of "suitable work," and SVHI offers no reason why the Board's view of the disparity—a matter within its expertise—should be overturned on appeal. *Allen v. Department of Employment Security,* 141 Vt. 132, 134, 444 A.2d 892, 893 (1982).

SVHI's other arguments are without merit.

*Reversed and remanded for further proceedings consistent with this opinion.*

**Dooley, J., dissenting.** If the issue here were whether the Board erred in spite of finding that claimant imposed the durational limit on his employment, I could accept the decision. The issue instead is whether the Board erred in refusing to reopen the evidence to allow the employer to submit additional evidence. As the majority states, the Board has discretion in making such a decision. See *Miner v. Department of Employment & Training*, 144 Vt. 211, 213, 475 A.2d 233, 235 (1984). I believe the decision here fell well within the Board's discretion and should be affirmed.

There are four reasons why I believe the Board properly exercised its discretion in refusing to reopen for additional evidence. The first is that the employer had the clear opportunity to present this evidence and failed to do so. The issue arose at the referee's hearing on February 15, 1989. At that time, the issues were whether claimant left voluntarily and whether he was an independent contractor. On the former issue, the employer testified that he wanted claimant to stay beyond the month "as an employed veterinarian," but they could not agree on a salary for such permanent employment. He did not testify that he wanted claimant to stay for a further period as a relief veterinarian paid at the daily rate.

Claimant, on the other hand, clearly testified that the employer set the duration of the temporary employment. He stated that the employer "had a three to four week period which he could use me" and that the employer "approached me for working for a specific time period, a four-week period." He added that he had no arrangements with any other employer for work after he finished at the Shelburne Veterinary Hospital. He eventually was hired by another employer on July 1st, approximately a month after leaving the Shelburne Veterinary Hospital.

The employer was allowed to question the claimant but failed to ask about the circumstances surrounding the durational limit on claimant's temporary work. Although offered the opportunity, the employer did not give any rebuttal testimony. Thus, the referee had no indication that there was any dispute in the testimony. Not surprisingly, the referee found that the employer set the one-month limit on the employment.

Second, the employer has no good explanation why he failed to develop the issue of the durational limit at the referee's hear-

ing. The letter from employer's counsel seeking reopening stated that the reason was to clarify the evidence in the record. It gave no reason why the employer did not clarify the evidence at the time of the referee's hearing, when he heard evidence that he now alleges is clearly false and did nothing about it. In fact, the evidence was undisputed and clear that the employer, not the claimant, imposed the durational limit.

The only other ground was stated by the employer (not his counsel) at the Board hearing and is apparently accepted by the majority here. He stated, "none of that opportunity [to present the evidence] was afforded me or given to me because the issue was not clearly defined at the preliminary hearing." To the contrary, he had the opportunity to present the evidence, and the issue was sufficiently defined. He was told he had to present a case on voluntary leaving and did so; he "cannot look to the [referee] to insure the completeness of his [case]." *Olde & Co. v. Boudreau*, 150 Vt. 321, 323, 552 A.2d 793, 794 (1988). Claimant clearly saw the relevancy of the issue and testified on it without being disputed by the employer.

Third, there is no indication that the employer will be able to prove what he now alleges. Claimant testified directly to the contrary, without any response by the employer. The employer alleges that claimant had to leave because of other responsibilities; the evidence shows that he was without work for a month until he took a job in Maine. The employer alleges that claimant submitted a letter that states that he imposed the limit on his employment. The letter is in the record and does not state what the employer claims for it. Although the employer claims his nurses will testify to certain facts, no affidavits were offered to show that testimony.

Fourth, the taking of additional evidence at this late date is very unfair to claimant. He collected one month of unemployment compensation and moved out of state. It will cost him as much as the unemployment benefits he received to appear at an additional hearing. If he does not appear, his credibility must be weighed from a two-year-old record against new testimony from the employer and his witnesses. If he does not prevail, he may become liable for the benefits he received. See 21 V.S.A. § 1347(a), (b).

Rule 16(L) of the rules of the Vermont Employment Security Board allows additional evidence to be presented to the referee

only where "the parties are given an opportunity of examining, cross examining, and refuting such evidence." See 2 Code of Vermont Rules, Rule 23010001, at 21 (1985). Claimant will have only an illusory opportunity to cross-examine the employer's witnesses or to refute them. It is unjust to make him go through another hearing.

The majority's response to this appears to be a new rule of law, roughly stated as follows: "No matter how unfair to the claimant, when the employer alleges that he has relevant evidence he would have presented if he knew fully and completely the law applicable to his case, he *must* be allowed to present that evidence." We have rejected a rule like that for court proceedings. See *Boudreau*, 150 Vt. at 324, 552 A.2d at 795 (decided under V.R.C.P. 60(b)). This rule undermines finality of unemployment compensation adjudication and gives employers a second try to avoid payment of benefits at the expense of unrepresented claimants. It is a bad rule from which I must dissent.