**LOST IN THE FIFTIES, LLC, Appellant,**

v.

**Matthew MEECE and Missouri Division of Employment Security, Respondents.**

No. 24393.

Missouri Court of Appeals, Southern District, Division Two.

April 10, 2002.

**274**

Robert C. Johnson, Husch & Eppenberger, LLC, Kansas City, for appellant.

Ronald J. Miller, Ninion S. Riley, Cynthia Quetsch, Jefferson City, for Div. of Emp. Security.

JOHN E. PARRISH, Judge.

Lost in the Fifties, LLC, (employer) appeals an award by the Labor and Industrial Relations Commission (the commission) of unemployment benefits to Matthew Meece (employee). Employer contends the record before the commission did not provide sufficient competent evidence to support the award. This court affirms.

Appellate review of the commission's decisions in unemployment compensation cases is undertaken pursuant to § 288.210 [1] that provides, in pertinent part:

The findings of the commission as to the facts, if supported by competent and substantial evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the appellate court shall be confined to questions of law. The

---

1. References to statutes are to RSMo 2000.

court, on appeal, may modify, reverse, remand for rehearing, or set aside the decision of the commission on the following grounds and no other:

(1) That the commission acted without or in excess of its powers;

(2) That the decision was procured by fraud;

(3) That the facts found by the commission do not support the award; or

(4) That there was no sufficient competent evidence in the record to warrant the making of the award.

Employee is a musician. He performed in a show produced by employer pursuant to a written contract. The contract was dated January 7, 2000 (the first contract). It is entitled "ARTIST AGREEMENT." Its provisions include:

2. *Term:* The term of this Agreement is February 1, 2000, through January 1, 2001.

. . .

10. *Termination:* [Employer] shall have the right to immediately terminate the Agreement for the failure of [employee] to perform the terms of this agreement.

. . .

18. *Other Employment:* [Employee] agrees that [employee] will not perform other performance engagements during the term of this agreement.

Employee was paid a set amount per performance. The final performance under the first contract was December 16, 2000. After that performance, employer offered employee a new contract (the second contract) for the next season. The term of the second contract would have commenced February 15, 2001. It would have ended January 1, 2002. Some of its provisions differed from those in the first contract. The compensation per performance was increased. There were changes to paragraphs 10 and 18 from the corresponding paragraphs of the first contract. Paragraphs 10 and 18 of the second contract state:

10. *Termination:* [Employer] shall have the right to immediately terminate the Agreement for the failure of [employee] to perform the terms of this Agreement or for the failure of [employee] to adequately perform his/her portion of the Show, or in the event the Show closes.

. . .

18. *Other Employment:* [Employer] retains exclusive right to present [employee] within a sixty (60) mile radius of Branson, Missouri until January 1, 2002. Exceptions to be made with the written consent of Management only.

Employee had until January 10, 2001, to sign and return the second contract. Employee's brother is an attorney. Employee asked him to review the second contract. The attorney expressed concern about paragraphs 10 and 18 of the contract. He expressed the opinion that paragraph 10, the termination clause, made it easier and more subjective for employer to terminate the agreement. He was also concerned that the covenant not to compete, paragraph 18, forbade employee from performing within 60 miles of Branson, Missouri, until January 1, 2002, even if employer terminated employee's employment. Employee was told this was "unconscionable"; that he should not sign the agreement. Employer was asked, but refused, to remove the changes that had been made in paragraphs 10 and 18 of the second contract. Employee did not sign the second

contract. He sought unemployment compensation.

The commission found employee was entitled to receive unemployment compensation benefits. It addressed two issues, (1) whether claimant's separation from work would be characterized "as a quit or a discharge" and (2) if a discharge, whether it was due to misconduct by employee that was connected with his work.

The commission found employee was discharged. It held the period of employment was controlled by written contract that had made work available "only through, at most, January 1, 2001." The commission added, "In fact, [employee] last performed services for pay on December 16, 2000." The commission concluded that employee completed the terms of his employment agreement with employer; that "[s]ince the employer had limited the contract to a set term that ended January 1, 2001, and did not by its terms automatically renew ... [employee's] job ended on that day by the employer's contractual choice." The commission noted that the second contract, if accepted by employee, would not have begun immediately; that "[i]t was to start on February 15, 2001." The commission concluded, therefore, "that it was the employer who severed the employment relationship effective January 1, 2001."

Relying on the definition of misconduct in *Ritch v. Industrial Commission*, 271 S.W.2d 791, 793 (Mo.App.1954), the commission found that employee had satisfactorily completed the first contract; that employer presented no evidence that employee had engaged in unacceptable acts or omissions that led to his discharge. The commission concluded employee's employment contract "ended of its own terms on a date of the employer's choice"; that employee was not disqualified for benefits by reason of § 288.050.2.

■ Employer's first point on appeal argues the commission erred in finding employee was terminated from employment, but not for misconduct related to his work. Employer contends the commission erroneously applied the law; that one who voluntarily and knowingly engages in employment for a fixed term, as employer asserts employee did in this case, is deemed to have voluntarily quit at the end of that term.

■ Whether an employee leaves his or her employment voluntarily or is discharged is, generally, a factual determination. *Bunch v. Division of Employment Security*, 965 S.W.2d 874, 877 (Mo.App. 1998). So long as the commission's determination that employee was discharged is supported by competent and substantial evidence and was not procured by fraud, that determination is conclusive. *Burns v. Labor & Industrial Relations Com'n*, 845 S.W.2d 553, 554–55 (Mo. banc 1993); *see* § 288.210.

■ Review of Point I is undertaken first to ascertain whether the record, viewed in the light most favorable to the decision, contains sufficient competent and substantial evidence to support the commission's decision. *Bunch, supra.* If it does, a further determination regarding whether the commission's decision is against the overwhelming weight of the evidence is required. *Id.*

The commission found employee did not quit his job; that he was not offered continued employment on the same terms and conditions as those specified in the first contract. The commission acknowledged the concern that "the non-competition clause could arguably survive through January 1, 2002, regardless of whether or not the employer and [employee] had a parting of ways under the [second] contract." The commission found that "[employee], thus,

discussed his concerns with a member of the employer with whom [employee] reasonably believed he could communicate concerning such matters and problems"; that employee "received the response that the employer was unwilling to change any of the terms within the [s]econd [contract]." The commission observed that paragraph 10 of the second contract provided "looser grounds" on which employer could dismiss employee; that this "heightened" employee's concern that the non-competition clause would survive early termination of the second contract by employer. The commission noted there was no dispute but that employee satisfactorily completed the first contract.

■ The record before the commission, considered in its entirety and viewed in the light most favorable to the decision, contains sufficient competent and substantial evidence to support the commission's decision. Its determination is not against the overwhelming weight of the evidence. Employer argues, however, that because the first contract had a definite termination date, employee is deemed, as a matter of law, to have voluntarily quit as of that date. "Where the Commission's decision involves a question of law, we review the issue independently." *City of Kansas City v. Arthur,* 998 S.W.2d 870, 873 (Mo. App.1999).

■ Employer contends the commission erroneously applied the law; that one who voluntarily and knowingly engages in employment for a fixed term is, as a matter of law, deemed to have voluntarily quit at the end of that term; that, therefore, employee was ineligible for unemployment benefits at the end of the term of the first contract. Employer cites two cases in support of its argument, *Dubinsky Brothers, Inc. v. Industrial Com'n. of Mo.,* 373 S.W.2d 9 (Mo. banc 1963), and *Board of Education of the City of St. Louis v. Labor*

*& Industrial Relations Com'n, et al.,* 633 S.W.2d 126 (Mo.App.1982).

The cases on which employer relies are distinguishable from the circumstances of the present case. In *Dubinsky,* the court concluded the claimant was not discharged by the employer; that his loss of employment occurred because of a decision made by his union, not because of a decision of the employer. The claimant in *Dubinsky* worked as a movie theater projectionist. The union to which the claimant belonged provided projectionists for the theater. The theater management determined the number of projectionists needed based on the number of movie showings it provided. The union determined which of its members would work the available shifts. The theater management had no right, by reason of its agreement with the union, to select its projectionists, but could object if incompetent projectionists were sent to its theater.

*Dubinsky* held it was not the theater that denied claimant work; that, under those circumstances, claimant voluntarily left the employment the theater provided. 373 S.W.2d at 14–15. *Dubinsky* held the claimant was not entitled to unemployment benefits because his termination was consensual.

In this case, employment was offered to a particular employee. Employer decided the terms of employment. *Dubinsky* is of no assistance to employer.

Employer's reliance on *Board of Education of the City of St. Louis v. Labor & Industrial Relations Com'n, supra,* is also misplaced. In it, a teacher who held a temporary teaching certificate failed to obtain permanent certification. A teacher holding temporary certification was permitted by law to teach only 90 days. The teacher's employment ceased at the expiration of those 90 days. She then sought

unemployment benefits. Her application was denied on the basis that the termination was voluntary in that she failed to obtain the necessary certification that would have permitted her to teach beyond the 90 day period. The court held, under those circumstances, she did not become unemployed "through no fault" of her own. 633 S.W.2d at 133.

In this case, there is no claim that employee was not qualified to continue the work as a performer. *Board of Education* does not support employer's argument that employee voluntarily quit because he was unwilling to accept the terms of the second contract that differed from the terms of the first contract and which terms were unfavorable to employee.

The Division of Employment Security (the division), appearing in support of the commission's award, points to the statement in 76 Am.Jur.2d *Unemployment Compensation* § 112 (1992), that "it has been held that an employee who accepts employment with the knowledge that such employment is to be for a specific and limited period is not, for the purposes of determining eligibility for unemployment benefits, considered to have left such employment voluntarily when the period of employment ends." The division asserts that under the facts of this case, this should be the pronouncement. The division suggests that this case is similar to a Connecticut case, *Cervantes v. Administrator, Unemployment Compensation Act,* 177 Conn. 132, 411 A.2d 921 (1979); that *Cervantes* should be followed.

■ The claimant in *Cervantes* was a violinist. She had a contract to perform in ten concerts from October 1, 1975, to May 5, 1976, for which she was paid a specified amount per performance and for each hour of rehearsal. Following completion of the contract period, she filed for unemployment compensation benefits. *Cervantes* concluded the violinist did not voluntarily leave employment at the conclusion of the contract period and, therefore, was not disqualified from receiving unemployment compensation. *Cervantes* held the violinist's employer offered employment for ten concerts; that the employer, not the violinist, set the expiration date of the contract; that the violinist had no choice in deciding its duration.

Section 288.020, RSMo 1994,[2] directs that unemployment security law be liberally construed so as to further the public policy of Missouri in setting aside unemployment reserves to benefit persons unemployed through no fault of their own. *Sokol v. Labor & Indus. Rel. Comm'n,* 946 S.W.2d 20, 23 (Mo.App. 1997). In keeping with this policy, disqualifying provisions in the law are strictly construed against the disallowance of benefits. *Missouri Div. of Employment Sec. v. Labor & Indus. Rel. Comm'n,* 651 S.W.2d 145, 148 (Mo.banc 1983).

*City of Kansas City v. Arthur, supra.*

Here, as in *Cervantes,* employee had a written employment agreement (the first contract). It expired January 1, 2001. Like in *Cervantes,* employee was paid an established amount per performance. Employer established the duration of the contract and its termination date. This court finds *Cervantes* persuasive. This court finds no error in the commission's determination that employee did not leave his employment voluntarily. Point I is denied. ·

■ Point II argues employee's case should have been remanded to determine if employee rendered himself unavailable for work by accepting another job; that it

---

**2.** § 288.020, RSMo 2000, is unchanged from the 1994 revision of that statute.

was error to find employee was entitled to benefits absent that determination. Consistent with Point II, Point III argues the commission erred in awarding benefits because employee was unavailable for work during the period for which the second contract was offered. Employer contends that because employee was unavailable for work during the term of the second contract, his objections to the difference between its provisions and provisions in the first contract were irrelevant and did not form a basis on which the commission could find in his favor.

The "Statement of Facts" in the brief employer filed in this court is not in the narrative form customarily employed for that purpose. Rather, it consists of 20 numbered paragraphs similar to what would appear in a petition in a circuit court case. Paragraph 18 is the only recitation directed to the issues Points II and III attempt to raise. Paragraph 18 refers to a statement in paragraph 17 that lends meaning to its content. Those paragraphs (with references to the transcript and legal file omitted) state:

17. The Division of Employment Security's Deputy rejected [employee's] claim, concluding that the [second contract] was less restrictive than the [first contract].

18. [Employee] appealed the determination on April 2, 2001, asserting that ¶ 18 of the [second contract] would survive the termination of the [second contract]. In his appeal letter [employee] stated that he did not "want to leave Branson". By the date of his appeal, however, he had already received his contract for employment in Mackinaw, Michigan.

The part of the record on which employer relies in support of Points II and III is a memo submitted by employee as an attachment to his Notice of Appeal to Appeals Tribunal and certain testimony employee gave in the initial hearing on his claim. The memo is dated April 2, 2001. It states, in applicable part:

. . .

However, the [second] contract is cleverly written so as to keep the non-compete provision in effect until January 1, 2002. It may seem less restrictive because it only forbids me from performing "within 60 miles of Branson" instead of "anywhere", but the more important factor is that if my employer chooses to terminate me, the non-compete stays in effect and forces me to leave town to find work.

I don't want to leave Branson, but my lawyer advised me not to sign a contract that gave my employer such unfair control over my ability to make a living, especially since it was a change from my previous agreement.

The hearing before the appeals referee of the division was conducted by telephone May 1, 2001. Employee participated in the call from Mackinaw City, Michigan. He testified that he was performing in a show there. He was asked when he first learned about a job opportunity to do the show in Mackinaw City. Employee answered he learned of the opportunity when he "got the contract" from the Michigan show in "late March" 2001.

Points II and III attempt to inject false issues. The issue that was before the commission was employee's eligibility for benefits. The facts that determined employee's eligibility were the facts that existed at the time the first contract terminated. If employee were eligible for benefits, the length of time he would receive those benefits would be determined on a week-by-week basis. As the division aptly explains in its respondent's brief:

Once a claimant files an initial claim and is determined to be an insured worker, a benefit year is created. Section 288.030.1(3), RSMo. The benefit year is a one-year period beginning with the week in which the initial claim is filed. *Id.* During this benefit year, the claimant may claim and receive up to twenty-six weeks unemployment benefits, subject to a number of restrictions and qualifications.... Section 288.060.4, RSMo.

 Employer is an interested party in the case pursuant to which employee would receive benefits. As such, employer would be entitled to protest any weekly determination of employee's eligibility. Following a determination of employee's benefits for the particular week, if either party were aggrieved, that party could appeal. *See* § 288.070.4. *See also Heavy Duty Trux v. Labor & Industrial Relations Com'n,* 880 S.W.2d 637, 645 (Mo.App. 1994). The issues posed by Points II and III were not before the commission or a part of the award that employer appeals. Those issues are not issues before this court as part of this appeal. "This court may not properly address an issue that was not determined by the Commission."

*Placzek v. Division of Employment Security,* 49 S.W.3d 717, 720 (Mo.App.2001). Points II and III are denied.

Employer's final point on appeal asserts the commission erred in concluding employee rejected employer's offer of employment tendered by the second contract for good cause. Point IV argues that the commission's determination that employee's rejection of the second contract was against the weight of the evidence.

A review of the entire record, viewing the evidence in the light most favorable to the finding of the commission, discloses the decision rendered by the commission is supported by competent substantial evidence and authorized by law. *See Streitz v. Juneau,* 940 S.W.2d 548, 550 (Mo.App. 1997). Point IV is denied. The award is affirmed.

GARRISON, P.J., and RAHMEYER, J., concur.