DECISION
Before this Court is a Motion to Compel Production of Documents pursuant to Super. R. Civ. P. 37 filed by Dorothy Bessette ("Plaintiff" or "Bessette"). The Miriam Hospital ("Defendant" or "Miriam") objects to the Motion to Compel. For the reasons discussed herein, this Court grants Plaintiff's motion in part and denies it in part.
 I Facts and Travel
Plaintiff seeks production of two documents: 1) A timeline and summary created by Donna Leger, R.N. ("Leger") in preparation for a Peer Review Committee meeting and 2) a five-page report documenting the proceedings of that meeting. This Court heard arguments on September 29, 2010.
On March 11, 2010, a Peer Review Committee meeting was convened to discuss the treatment that Bessette received at Miriam in November of 2008. In order to prepare for the meeting, Leger "summarized [Bessette's] chart and created a timeline of . . . patient experience." (Deposition Tr. 41.) The summary and timeline were created from a template on Leger's computer and still exist on her computer. Leger's practice in creating such documents is to create them before the Peer Review Committee meeting and then make any changes, if *Page 2 
necessary, after the meeting has occurred. After the subject Peer Review Committee meeting, the Committee created a five-page report of its proceedings.
Through discovery, Bessette sought production of the summary and timeline as well as the five-page report. Miriam, citing the evidentiary protections of G.L. 1956 § 23-17-25, refused to produce these documents. Bessette then brought the instant Motion to Compel.
 II Analysis A Applicable Law
A "peer review board," as defined in G.L. 1956 § 5-37-1(11)(i), is "any committee . . . one of the functions of which is to evaluate and improve the quality of health care rendered by providers of health care service or to determine that health care services rendered were professionally indicated or were performed in compliance with the applicable standard of care. . . ." With respect to peer review boards, § 23-17-25 provides that "[n]either the proceedings nor the records of peer review boards as defined in § 5-37-1 shall be subject to discovery or be admissible in evidence in any case save litigation arising out of the imposition of sanctions upon a physician." Pursuant to § 23-17-40, hospitals must report the occurrence of certain events, such as brain injury, paralysis, or operation on the wrong patient, to the Department of Health within seventy-two hours of the event occurring or the hospital becoming aware of its occurrence, and the hospital must thereafter conduct a peer review process. Specifically, § 23-17-40(c) requires hospitals to "carry out a peer review process to determine whether the incident was within the normal range of outcomes, given the patient's condition" as part of the reporting process.
The Rhode Island Supreme Court has held that § 23-17-25 "explicitly dictates that only the records and proceedings which originate with the peer-review board are immune from *Page 3 
discovery and inadmissible[, and that] documents originating from sources other than a peer-review board are not protected from discovery or inadmissible simply because they were utilized by" a peer review board. Cofone v. Westerly Hospital,504 A.2d 998, 1000 (R.I. 1986); see also Moretti v.Lowe, 592 A.2d 885, 858 (R.I. 1991) ("[W]e find that § 23-17-25 does not render immune information otherwise available from original sources even if the information was presented at a peer-review committee meeting."). Additionally, the Rhode Island Supreme Court has held "that § 23-17-25(a) and § 5-37.3-7(c) do not require a plaintiff to obtain access to information from its original source." Pastore v. Sampson,900 A.2d 1067, 1081 (R.I. 2006). In Pastore, our Supreme Court rejected a doctor's claim that a plaintiff was required to "obtain access to information that was gathered by a peer-review board from original sources directly from those original sources rather than from the peer-review board." Id. Thus, information accessible from original sources presented to the Peer Review Board on March 11, 2010 is not protected from discovery by § 23-17-25
 B Timeline and Summary
The Defendant maintains that the timeline and summary were created as part of the peer review process. This Court disagrees. In her deposition, Leger stated that she created the timeline and summaryprior to the peer review meeting in order to prepare for the meeting. (Deposition Tr. 42.) Thus, the creation of the summary and chart was not itself part of the peer review process.
Because the timeline and summary were created using a template and simply summarized existing information, Leger did notsynthesize any new information when creating the timeline and summary. In fact, the timeline and summary seem to be exactly the type of documents anticipated in Moretti: documents containing information otherwise available from original *Page 4 
sources — such as patient files and hospital records — that were presented at a peer review committee meeting. This otherwise-discoverable information does not suddenly become privileged simply because it was presented to a peer review committee.
The Plaintiff, therefore, need not obtain that information from its original source. Pastore dictates that the Plaintiff should have access to the timeline and summary themselves.See Pastore at 1081 ("To oblige a plaintiff to track down the original source of unprivileged information that is within the custody of a party to the dispute would be to require burdensome labor for no good reason."). Together, Moretti andPastore instruct that the summary and timeline should, therefore, be discoverable because they are summaries of otherwise-discoverable information that are in the Defendant's custody.
Leger testified that the timeline and summary in their original form still exist on her computer. (Deposition Tr. 42.) Accordingly, the Defendant shall supply the Plaintiff with the timeline and summary in the form in which they existed before the peer review meeting took place. Plaintiff may not access any version of the letter that contains information synthesized at the peer review meeting.
 C Five-Page Report
The five-page report outlines the Peer Review Committee's analysis and findings. It is, therefore, squarely within the type of document § 23-17-25 was designed to protect. This Court notes that § 23-17-25 and § 23-17-40 are distinct, independent statutes. While reportable incidents are an important reason for a peer review meeting, hospitals perform root cause analysis and peer reviews for several other reasons. The protections of § 23-17-25 thus apply in myriad situations other than the required peer review process that is part of § 23-17-40. *Page 5 
Whether Miriam did or did not comply with the reporting requirements of § 23-17-40 is an issue to be resolved by Miriam and the Department of Health. The failure to comply with § 23-17-40 does not change the character of the March 11, 2010 meeting. The March 11, 2010 meeting certainly was a meeting "to determine that health care services rendered were professionally indicated or were performed in compliance with the applicable standard or care." Sec. 5-37-1(11)(i).
A violation of the reporting requirement of § 23-17-40 does not result in the loss of the evidentiary protections of § 23-17-25. Simply, Miriam's meeting on March 11, 2010 fit within the definition of peer review meeting provided in § 23-17-25 and § 5-37-1, and thus the five-page reporting of the proceedings of this meeting is precluded from discovery in this matter.
 III Conclusion
The timeline and summary of the Plaintiff's chart that Leger created in preparation for the March 11, 2010 meeting is not protected by § 23-17-25 and should be provided to the Plaintiff through discovery within thirty days. The five-page report of the meeting's proceedings is protected by § 23-17-23 and need not be provided to Plaintiff. Counsel shall submit the appropriate order for judgment.